SMITH *v.* SMITH–PETERSON COMPANY ET AL.

No. 3087

May 31, 1935.                    45 P. (2d) 785.

*H. R. Cooke,* for Appellant:

*Thatcher & Woodburn* and *Wm. J. Forman,* for Respondents:

## OPINION

By the Court, DUCKER, C. J.:

This controversy grows out of injuries alleged to have been suffered by appellant's minor son when a dynamite cap exploded in the boy's hand. Appellant, suing in the latter's behalf, seeks to recover the sum of $15,000 for such injuries. A demurrer to the complaint was sustained, and judgment entered thereon.

Respondents contend that the complaint does not state a cause of action, and the judgment was put on that ground.

According to the complaint, respondents, for some months prior to and on August 25, 1933, had been and were engaged in rock crushing on a five-acre tract of land owned by them, or in their possession and control, and situate partly within and partly without the corporate limits of the city of Reno. On this tract of land respondents had installed various types of machinery in a pit about 150 feet wide by about 450 feet long

and 20 feet deep, excavated by them, and had carried on blasting by the use of powder, fuse, and dynamite caps. In or near the pit was a large pile of fine sand which, together with the pit, machinery, and equipment therein, greatly interested young boys who were, to the knowledge of respondents, accustomed to visit the premises and pit on nonschool days and to loiter and play thereat. About 200 feet to the north of the pit were and are situate the tracks of the main line of the Southern Pacific Company between the city of Reno and Sparks, along which tracks were paths frequented by boys and other persons walking between these points. Within 20 feet, and to the south of the pit, is the Truckee River, and to the south of the river and opposite the pit is a city dumping ground long frequented by boys residing in the neighborhood in searching for articles on the dump. A large sewer pipe forming a sort of a walkway was laid across the river by the city of Reno between the dump and the pit premises. Boys customarily crossed from the dump premises on said sewer pipe, and with the knowledge and consent of respondents entered their premises and pit without any warning or prohibition. A short distance to the north of respondent's premises and across the said railway tracks resided a large number of families, the children of which customarily visited, loitered, and played in and about the pit for periods of from fifteen minutes to an hour at a time. The pit was unenclosed, and various roads used by trucks and other vehicles led into and from said pit, and paths and walkways, customarily used by children and others, led into the pit. Respondents at all times had notice and actual knowledge of the foregoing matters.

While carrying on said blasting operations in the easterly portion of the pit on or about August 25, 1933, respondents carelessly and negligently kept and placed in the westerly portion of the pit, readily accessible to children and wholly exposed, unguarded, and unprotected, about 20 to 25 pieces of fuse about one foot in length, some burnt and some unburnt, to one of which

pieces of unburnt fuse a dynamite cap had been fixed by respondents and left ready for firing. These articles lying loose, scattered and abandoned, were known to respondents to be attractive to and would arouse curiosity of children, and tended to invite and induce children of the age of the two boys hereinafter mentioned, to go upon the premises and examine the objects there lying.

No blasting operations had been carried on in the westerly portion of the pit for several weeks or more, prior to said August 25, 1933. On or about that date two boys, each of the age of 11 years, while playing in the abandoned area of the pit, picked up some fuse including the piece with the dynamite cap affixed, and carried them off respondents' premises and gave some of them, including the piece with the dynamite cap affixed, to appellant's minor son. It is alleged that the boys, in picking up and carrying the pieces of fuse away, at the time, understood and believed, and had a right to understand and believe, that respondents had no objection to children loitering and playing in the westerly portion of the pit, and that the said pieces of fuse had been by respondents' workmen wholly discarded and abandoned and of no use or value. These children, including appellant's son, had had no experience with dynamite caps and had no knowledge or appreciation of the dangerous character thereof, but understood and assumed that such dynamite cap so affixed to the fuse was intended to serve as a handle for the piece of fuse for more convenient handling and firing thereof. On September 1, 1933, appellant's minor son, while attempting to make what boys call a "sizzler" of said fuse with the dynamite cap affixed, lighted the fuse, at the time holding the cap end thereof in his right hand. The dynamite cap exploded, mangling his hand and causing other injuries.

■ Such in brief is the story of the complaint. Does it show liability? Appellant insists that it does because the pit, machinery, equipment, and sand formed a place where children were in the habit of going to loiter and

play, and that respondents knowing this, and having acquiesced in it, were under the legal duty to take reasonable precautions either to prevent the further coming of children, or to refrain from leaving dangerous explosives, such as dynamite caps, lying loose and abandoned on the premises. This, we take it, is appellant's main contention, though there is language in his briefs which indicates that reliance is also had on the doctrine of an attractive nuisance. On the other hand, respondents contend that there is no duty to a trespassing child by a landowner except to refrain from willfully or wantonly injuring him. They contend, further, that if an exception to the above rule exists in a case where the trespasser is induced to go upon the premises by reason of some attraction situated thereon, that the facts alleged in the complaint do not show such a case. They contend, further, that the attractive nuisance doctrine is not sound in law and should not be adopted in this state. The two latter contentions we may dismiss from our consideration because we are satisfied that the so-called attractive nuisance doctrine declared by the supreme court of the United States and some state courts of last resort has no application to the facts of this case. This because the complaint does not allege that the two boys who picked up the fuse with the dynamite cap attached, which they gave to the boy injured by its explosion, were led to the pit by its attraction or the attraction of the instrumentality which caused the mischief.

An allegation to that effect would be essential under the authorities supporting the doctrine. Sioux City & P. R. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745; United Zinc & Chemical Co. v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28; Perry v. Tonopah Mining Co. (D. C.) 13 F. (2d) 865; Hayko v. Colorado & Utah Coal Co., 77 Colo. 143, 235 P. 373, 39 A. L. R. 482. These decisions proceed upon the ground that the attraction has to children the legal effect of an invitation.

The trial court ruled correctly in holding that the

complaint does not state a cause of action on the theory of an attractive nuisance. We must determine then whether, independently of this question, the complaint shows liability. Analogies to their satisfaction are found by respondents in cases like United Zinc & Chemical Co. v. Britt, supra, and Hayko v. Colorado & Utah Coal Co., supra. In the former case, in which the principle of an attractive nuisance was recognized with strict limitations, it was held that "infants have no greater right to go upon other people's land than adults, and the mere fact that they are infants imposes no duty upon landowners to expect them and to prepare for their safety." The latter case holds to the same effect.

In opposition to the doctrine of such cases appellant stresses the recent case of Best v. District of Columbia, 291 U. S. 411, 54 S. Ct. 487, 78 L. Ed. 882, as a controlling authority for his contention. In that case a child of five years of age, while playing on a wharf belonging to the District of Columbia, fell through a hole in the wharf and was drowned. The action was for damages for the alleged negligence of the District. While the situation there was materially different from that revealed in United Zinc & Chemical Co. v. Britt, supra, we do not think that the case is an authority for appellant's contention that, irrespective of the attractive nuisance theory, liability appears from the facts stated in the complaint. We are, however, persuaded to the conclusion that appellant's contention must be allowed.

The complaint shows the tract of land on which the pit was located to be situated partly within the limits of a populous city near the residences of a large number of families and unfenced; that the pit, together with the other features alleged, and its proximity to the homes of many families having children, was a likely place for children to visit and play in; that a large number of children customarily visited the pit to loiter and play therein, all within the knowledge and consent of respondents; that the blasting operations

carried on there by means of dynamite, if not attended with due circumspection, made the pit a danger zone for such children. These circumstances, we think, were sufficient to give respondents reason to anticipate the presence of children in the pit and give rise to the duty of taking reasonable precautions either to prevent their coming there or obviating the danger to which they were exposed.

The rule, we think applicable, is stated by Judge Thompson in his work on the Law of Negligence, vol. 1, sec. 1030, as follows: "We come now to a class of decisions which hold the land-owner liable in damages in the case of children injured by dangerous things suffered to exist unguarded on his premises, where they are accustomed to come, with or without license. These decisions proceed on one or the other of two grounds: (1) (Attractive nuisance doctrine.) (2) That although the dangerous thing may not be what is termed an attractive nuisance — that is to say, may not have an especial attraction for children by reason of their childish instincts—yet where it is so left exposed that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them."

The rule applicable to this class is broadly stated in Shearman & Redfield on the Law of Negligence, sec. 705, as follows: "The owner of land, where children are allowed or accustomed to play, particularly if it be unfenced, must use ordinary care to keep it in a safe condition, for they, being without judgment and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers and mere licensees."

With reference to explosives, the rule is thus stated in 11 R. C. L. 664: "As a general rule a person leaving exposed and unguarded on his premises an explosive

which is found by trespassing children, is liable for any injuries resulting from its explosion. This rule is based on the very natural and reasonable assumption that children, wherever they go, must be expected to act upon childish instincts and impulses; and those who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly. If persons leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, such persons should expect that liberty to be taken."

In 45 C. J. 757, it is stated: "It is also considered that one who maintains something dangerous to children and so exposed that there is a likelihood of their coming in contact with and being injured by it, is under a duty of anticipating injury to them and taking precautions to avoid it, even though the particular thing in question does not come within the attractive nuisance rule."

In Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P. (2d) 369, 374, it was said: "All courts recognize the fact that explosives are instrumentalities of the most dangerous character, and that their dangers are unknown to young children, or at least insufficiently appreciated by them to prevent their natural inclination to tamper with them, causing harm, the tampering being probable because of the attractiveness due to noise or fire, or to the attractive appearance of some explosives, and their apparent use in play. * * * And the rule is that one having explosives in his possession, so far as their safe-keeping is concerned, is under a duty to exercise the highest care to avoid them coming into the hands of children and causing harm to or through them, and it is conceded in the majority of jurisdictions, and conceded in all jurisdictions that apply the doctrine of attractive nuisance, that whether the children are or are not trespassers is immaterial, if there is a reasonable probability of

their presence that would create a danger of the explosives falling into their hands."

In Southwest Cotton Co. v. Clements, 25 Ariz. 124, 213 P. 1005, 1009, it appeared that the employees of the defendant corporation left a dynamite cartridge lying on the ground on its premises. A 12-year-old boy, who had been going on the premises with its permission, picked up the cartridge which afterwards exploded in his hand, injuring him. The court held the defendant liable, saying: "We think under the facts in this case it made little or no difference whether the plaintiff was a trespasser, a licensee, or an invitee. It is quite clear that he was a licensee; but under the authorities he would have been entitled to a verdict even had he been a trespasser, providing he satisfied the jury the defendant left the dynamite cartridge where he found it. At all events, it may be questioned whether the rule is different, as applied to these different classes, when the injured party is a child and the instrumentality causing the injury is dynamite or other high explosive."

In Butrick v. Snyder, 236 Mich. 300, 210 N. W. 311, 313, it appeared that some dynamite caps were left by a road construction company in a tool shed situated on unfenced, unoccupied land held in private ownership, at a place about 600 feet from a schoolhouse, and about 150 feet back from a highway. The pupils attending the school had been permitted by the teacher, the year before the dynamite was used on the highway, to cross it and play on the land. In November of the following year, two boys of the school, aged 9 and 11 years, were given such permission. They went into the tool shed, the front of which was open, and discovered some dynamite caps in a box on a shelf. They did not know what they were. The older boy took the cap which injured the younger out of the box and gave it to him. At the afternoon recess, the younger boy got some matches and laid the cap on a stove in the schoolhouse and lit the end of it. An explosion followed, injuring him. It was held that the defendant construction company could not avoid

liability on the ground that the plaintiff was a trespasser. In the course of its opinion, the court said: "The proximity of the school and the probability that these lands would be used as a playground by the children were facts apparent to defendant's employees. Whether a reasonably prudent person, with a knowledge of the conditions surrounding the building and the use which the school children would probably make of this unfenced and unoccupied land, should have anticipated the danger incident to leaving these caps as they were left in the shed, was, we think, a question for the jury."

In Mattson v. Minnesota & North Wisconsin Railroad Co., 95 Minn. 477, 104 N. W. 443, 445, 70 L. R. A. 503, 111 Am. St. Rep. 483, 5 Ann. Cas. 498, the court said:

"The rule governing cases of this kind, stated in substance, is that one who maintains dangerous instrumentalities or appliances on his premises of a character likely to attract children in play, or *permits dangerous conditions to remain thereon with the knowledge that children are in the habit of resorting thereto for amusement*, is liable to a child non sui juris who is injured therefrom, even though a trespasser."

Again the court said: "The dangerous instrumentality here involved (dynamite) is an extremely hazardous article in the hands of mature persons, and a hundred fold more so in the hands of young children. The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost caution must be used in their care and custody, to the end that harm may not come to others from coming in contact with them. The degree of care must be commensurate with the dangerous character of the article (Keasbey on Electric Wires [2d ed.] 269, 270), and is greater and more exacting as respects young children. As to such, the care required to be exercised is measured by the maturity and capacity of the child. Sioux City & P. R. Co. v. Stout, 17 Wall. (U. S.) 657, 21 L. Ed. 745. What would constitute reasonable care with respect to adults might be gross negligence as

applied to a young child. 7 Am. & Eng. Enc. Law (2d ed.), 441, and cases cited. The case at bar, within these rules, is even stronger than the so-called 'turntable cases.' There is nothing so attractive to young boys as articles of an explosive nature, and the greater the volume of sound that may be produced therefrom the greater the attraction. As compared with an ordinary turntable, dynamite is vastly more attractive, and far more dangerous. Young children are incapable of comprehending the dangers in handling or exploding the same, and their natural instincts urge them into experiments with it whenever it comes within their reach. In view of these considerations, the rule of law imposed upon him who possesses such dangerous articles should be more exacting than in the case of a turntable; and, applying the rule to the facts before us, it is clear that the jury was justified in finding negligence upon the part of defendant. It failed to take proper care of dynamite brought into this vicinity, and left it exposed upon the premises where children had, to the knowledge of its servants, been *in the habit of loitering and amusing themselves*." (The italics are ours.)

■ In holding the allegations of the complaint sufficient to state a cause of action, we are fully cognizant of the large number of respectable authorities in which the rule that a landowner or occupier cannot be held responsible for injuries to children classed as trespassers, unless the same are willfully or wantonly afflicted. We are unwilling to accept it. In our opinion it leaves out of view the common propensities of children to venture in play without that care for their safety that comes with the experience of maturer years. Injuries resulting in death or maiming of children, who by reason of their immaturity have been disposed to investigate and play with attractive dangerous instrumentalities, form a long and melancholy train of events in the realms of jurisprudence. These mournful experiences are sufficient, we think, to supply the basis of a rule of care on the part of those employing such instrumentalities in places accessible to and likely to

be frequented by children. The degree of care should, of course, be commensurate with the dangerous nature of the instrumentality. There are few things more attractive and none more dangerous for children to play with than a dynamite cap. As stated in Wood v. McCabe & Co., 151 N. C. 457, 66 S. E. 433, 434: "All courts and writers agree that the degree of care required of persons using such dangerous instrumentalities as dynamite in their business is of the highest, and what might be reasonable care in respect to grown persons of experience would be negligence as applied to youths and children."

If the case were only the accessible pit with its machinery, equipment, and sand in or near thereto, with the instrumentality alleged, the respondents would not be subject to liability from the mere fact that two boys wandered there and picked up the dynamite cap which caused the injury. The duty arises from the additional circumstances of the place being frequented by children for play, and which habit was known to respondents. Because of this knowledge and the knowledge of the nature of the danger to which they were unconsciously exposed, respondents should have been prompted to anticipate their presence and take proper measures for their protection. That the habit of children visiting a place of danger might supply a foundation for liability was intimated by the court in United Zinc & Chemical Co. v. Britt, supra, where the court remarks: "It does not appear that children were in the habit of going to the place; so that foundation also fails."

And again in the same opinion where the court, distinguishing Union Pac. R. Co. v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434, said: "It hardly appears that he was a trespasser; * * * at all events boys habitually resorted to the place where he was." (We have supplied the italics.)

■■ It is contended by respondents that the complaint fails in stating essential facts in not alleging

that the two boys who found the dynamite caps were children of inferior intellect. The argument in this regard is that boys of the age of 11 years should be presumed to appreciate the danger of dynamite caps and know that it was wrong to go on another's premises and appropriate personal property found there. We do not agree with this contention. There is no conclusive presumption that a child of 11 years of age must be considered capable of exercising the same care for its safety as a mature person. As was said in Consolidated City & C. P. Ry. Co. v. Carlson, 58 Kan. 62, 48 P. 635, 636: "The question as to the capacity of a particular child at a particular time to exercise care in avoiding a particular danger, is one of fact, falling within the province of the jury to determine."

In the instant case, insofar as the pleading is concerned, the question of the children's capacity for the exercise of due care is foreclosed by the allegations: "That these children, including appellant's son, had had no experience with dynamite caps and had no knowledge or appreciation of the dangerous character thereof."

■■ In the face of such allegations it cannot be said that contributory negligence appears on the face of the complaint. Consequently such negligence would be a matter of defense unless it appeared by plaintiff's evidence. The same is true of the contention that the boys should be presumed to know that it was wrong to appropriate the pieces of fuse, in view of the allegation that "at the time (they) understood and believed and had a right to understand and believe that * * * said pieces of fuse had been by respondents' workmen wholly discarded and abandoned and of no use or value."

■ Respondents contend that the complaint fails to show that the injuries to appellant's son were proximately caused by their negligence. It is insisted that the acts of the two boys on the premises as trespassers and wrongdoers constituted an intervening cause

which was the proximate cause of the injury. So far as the complaint discloses, they were not trespassers, except in the very technical sense, and were not wrongdoers for taking the fuse which they believed had been discarded. Their actions, therefore, did not constitute such a sufficient independent cause operating between respondents' negligence and the injury that it can be said as a matter of law to have been the proximate cause of such injury, even though it contributed thereto, unless their acts could not have been reasonably foreseen.

The rule is stated in Konig v. Nevada - California-Oregon Ry., 36 Nev. 181, 135 P. 141, 153, where the court said: " * * * If the probable cause of an injury or accident is the first wrong done, then that becomes the proximate cause, regardless of how many acts may have been performed or how many agencies may have intervened between the first act or wrong and the catastrophe. Any number of causes may intervene between the first wrongful act and the final injurious consequences, and, if with reasonable diligence they are such as might have been foreseen, the consequences, as well as every intermediate result is to be considered in law as the proximate result of the first wrongful cause. Whenever a new cause intervenes which is not the consequence of the first wrongful cause, and which is not under the control of the first wrongdoer, and which he could not with reasonable diligence have foreseen, and except for which the final catastrophe could not have happened, then such a result must be held too remote to furnish the basis of an action. In all cases where no other cause intervenes between the original act or omission contributing or producing the resultant catastrophe, negligence of the first wrongdoer is to be regarded as the proximate cause of an injury." Thompson's Commentaries on Law of Neg., vol. 1, sec. 49.

The circumstances shown by the allegations of the complaint when subjected to the foregoing rule disclose a case where the respondents ought in reason to

have anticipated what actually happened as the result of their negligence.

The judgment is reversed.

### ON PETITION FOR REHEARING

September 5, 1935.                                    48 P. (2d) 760.

For former opinion, see 56 Nev. 79, 45 P.(2d) 785.

*H. R. Cooke,* for Appellant.

*Thatcher & Woodburn,* for Respondents.

## OPINION

By the Court, DUCKER, C. J.:

A petition for rehearing has been filed in which counsel for respondents express strong exceptions to our decision. A portion of the petition is devoted to a reargument of respondents' case. It is not contended

that the court failed to decide any point presented, but the decision is vigorously assailed as being without precedent, radically wrong, and, if permitted to stand, will place an undue burden upon the owner or possessor of land in this state.

We have given the argument due consideration, but are not persuaded that our decision is wrong.

We concede that it is more liberal to the injured party than many of the cases cited by respondents, but we do not concede that it is wrong in principle or without precedent or inequitable between the owners or occupiers of land and trespassing children. We are willing to grant that the public's interest in the possessor's free use of his land for his own purposes is of the greatest importance. It is, however, of no higher importance than the protection of children who, by reason of their immaturity, are entitled to such protection.

We do not intend to again discuss respondents' contentions at large, but will give attention to a particular point made in the petition for rehearing. First, however, we will advert to the claim that the decision is without precedent.

The American Law Institute has been well designated as an attempt to meet the need of some restatement of law that will bring certainty and order out of the wilderness of precedent. That the decisions of courts on the subject of trespassing children make up such a multitude of precedent is recognized by counsel for respondents, for, in their petition for a rehearing, it is said, they "are fully cognizant of the almost chaotic state of the law upon the subject of duties and liabilities of landowners towards trespassing children." There being such a growth of precedent, it is gratifying to find that the American Law Institute has established rules consistent with the case made by the allegations of the complaint in this action. Restatement, Torts, sec. 339. It is there said:

"A possessor of land is subject to liability for bodily

harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

Comment on clause (a) in part is: "It is sufficient to satisfy the conditions stated in clause (a) that the possessor knows or should know that children are likely to trespass upon a part of the land upon which he maintains a condition which is likely to be dangerous to them because of their childish propensities to intermeddle or otherwise. Therefore, the possessor is subject to liability to children who after entering the land are attracted into dangerous intermeddling by such a condition maintained by him although they were ignorant of its existence until after they had entered the land, if he knew or should know that the place is one upon which children are likely to trespass and that the condition is one with which they are likely to meddle."

As to the particular point made in the petition, it is contended that this court laid down a rule that the frequenting of the premises by children will give rise to a duty on the part of the landowner to protect such children; that the court misapplied such rule to the allegations of the complaint for the reason that it nowhere appears therein that the two boys who picked up the fuse had ever visited the premises theretofore,

were members of the neighborhood group, or that they had any knowledge that any other children had ever frequented the premises.

In connection therewith it is argued that it is necessary in every negligence case for the complaint to show either a duty owed by the defendant to the particular person injured, or that the latter was a member of a particular class or group of persons to which a duty was owed. Conceding that point was originally raised either directly or inferentially, which is doubtful, we will dispose of it. We think the complaint shows that the two boys who picked up the fuse were of the group in the habit of going to the pit. This is to be clearly inferred from the following allegations of the complaint. "That said two boys were playing in and about the pit. * * * That said two boys at the time understood and believed and had a right to understand and believe that defendants had no objection to children loitering and playing in the said westerly portion of said pit."

For the purpose of determining its effect, a pleading should be liberally construed. Section 8621 N. C. L.; Ferguson v. Virginia & T. R. Co., 13 Nev. 184.

Under this rule the foregoing allegations are sufficient, even in the presence of a general demurrer, to imply the fact claimed by respondent to be essential, that the said two boys belonged to the group or groups which frequented the place. 46 C. J. pp. 108, 109, 110; 21 Cal. Jur. 30.

But our opinion must rest on a broader basis. If the two boys were not shown to have previously visited the pit or to belong to a neighboring group of children who were in the habit of visiting it, the complaint would nevertheless state a cause of action. The duty of exercising care springs from the danger on the land and the knowledge on the part of the possessor that it is a likely place for young children to play in. When the duty is thus charged upon him, it extends to all trespassing children, who, if it is not observed, may be liable to injury. It is a false logic that says an

occupier of land is unduly oppressed if charged with a duty to all young trespassing children. If he is compelled to use ordinary care for the protection of those in the immediate vicinity who are in the habit of coming upon his land, wherein does he suffer any injustice if this duty extends to all who come within the protected class on account of their immaturity? Ordinary care protects him as fully from the many as from the few, or, if the danger is great, a corresponding degree of care shields him from damage in either instance.

It is to be observed that the restatement and comment formulated by the American Law Institute make no such limitations as counsel contends for. When the duty arises, it extends to young children trespassing on the land, and this, as we have indicated, is not unreasonable in scope. To illustrate, the complaint alleges the premises to be situate partly within the limits of a populous city. Certainly it would be a curious doctrine that would afford protection to young living nearest the pit and who were in the habit of going thereto to play, and withhold it from the others of the city, who might visit the place. To illustrate further, suppose two boys had come from afar to visit a family living near the pit and had gone with the children of that family to the place, would the duty devolving upon respondents have extended only to the latter? We think not.

For the reasons given, the rehearing is denied.