LOU ANN ARMER, A MINOR, BY IRWIN ARMER, HER FATHER AND NEXT FRIEND, APPELLANT, v. OMAHA AND COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLEE.

37 N. W. 2d 607

Filed May 26, 1949. No. 32613.

*Lyle Q. Hills,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This controversy involves damages claimed to have resulted from injuries sustained by appellant in a collision of a bus of appellee with a bicycle of appellant while operated by her.

The basis of the action was alleged negligent operation of the bus resulting in injuries and damages to appellant. She charged negligence as follows: That appellee failed to keep a proper lookout; failed to warn appellant of the approach of the bus; failed to reduce the speed of, or stop, the bus and avoid the collision with appellant; drove the bus on the west, or wrong, side of the street; operated it at a high and unlawful speed contrary to the ordinance of the city of Omaha and statutes of the State of Nebraska, to wit, 40 miles an hour; that appellee saw, or should have seen, appellant in a position of imminent peril of being injured by the bus in time for it, by the exercise of ordinary care with means at hand and with safety to the bus, to have avoided injury to appellant by decreasing the speed thereof or stopping it, or operating it on the east, or right-hand, side of the street, or by giving a timely warning of its approach, but negligently failed to do so and thereby proximately caused injuries to appellant; and that an ordinance of the city requires speed at the location involved so as not to endanger any person, and in no event in excess of 25 miles an hour.

Appellee denied the claims of appellant and alleged the collision was the direct and proximate result of her negligence which was more than slight. Appellant replied with a denial, and alleged that she was a child of tender years, was incapable of being negligent, and was not negligent under the circumstances.

Motion of appellee to dismiss the action, made at the

close of the evidence of appellant, was sustained. Motion for new trial was denied.

The question in this case is whether or not the trial court was justified in discharging the jury and dismissing the case. The answer thereto depends on whether or not the evidence of appellant standing alone and accepted as true has probative force sufficient to make a prima facie case for her, and since judgment went against her, she is entitled to have all material and relevant evidence and all inferences fairly deducible therefrom viewed in the most favorable light in testing the correctness of the ruling of the court granting the motion of appellee and dismissing the case. Guyette v. Schmer, 150 Neb. 659, 35 N. W. 2d 689.

The evidence tends to establish that:

The place of the collision was at the first alley north of Lincoln Boulevard on the west side of Thirty-third Street in Omaha, Nebraska. Thirty-third Street is 35.4 feet wide, paved with brick, and extends from north to south. It is 174 feet from the north curb of Lincoln Boulevard to the north curb of the alley on the west side of Thirty-third Street, and 279 feet from the north curb of Lincoln Boulevard to the north curb of Cuming Street—the first street south of Lincoln Boulevard. Lincoln Boulevard and Cuming Street extend east and west and intersect Thirty-third Street. The entire distance from the north curb of Cuming Street to the north curb of the first alley north of Lincoln Boulevard on the west side of Thirty-third Street, the place of the accident, is 453 feet. The grade of Thirty-third Street from Cuming Street to Lincoln Boulevard declines 17.87 feet. From the intersection of Lincoln Boulevard with Thirty-third Street to the center of the alley on the west side of Thirty-third Street there is an incline of about 4 feet. There is a clear view from the alley south to Cuming Street, and anyone in the center of Thirty-third Street opposite the alley can easily see the center

of Thirty-third and Cuming Streets, a distance of 453 feet.

Lou Ann Armer was 11 years old on the 25th of February, 1947. The date and time of the accident was June 9, 1947, about 6:15 p. m. Appellant attended the public schools and was in the fifth grade. She received her bicycle from her mother as a birthday remembrance about two weeks before February 25, 1947. No instructions about safety matters were given her when she got it. She had ridden bicycles for about two years before the time of the accident, rode a good deal, and was good at riding. She did not ride to school. Her parents had not told her not to cross a street in the middle of a block. No one told her that when she was learning to ride, but she was told at school not to do so. She did not know at or before the time of the accident that she was supposed to make a signal for a left turn. Before the accident she was riding her bicycle west on Lincoln Boulevard. When she came to Thirty-third Street she turned and traveled north on that street, looked to see if there were any cars or traffic, and there were none. She traveled north on Thirty-third Street, closer to the center than the west curb, and continued north in the center of the street. She looked and saw no bus as she turned into Thirty-third Street. When she was near the alley on the west side of Thirty-third Street, she turned west to go into the alley, and when she was about into it she looked south. "I turned my head and saw the bus was real close." The bus hit her, and the next thing she remembered was when she woke up in the hospital. She could not tell how far away the bus was when she saw it. "It was really close, I can not tell how far because I don't know." She heard no horn sounded. It was upgrade from Lincoln Boulevard to the alley. When she got pretty close to the alley, or right beside this west alley, she made a turn to the west, but did not look for anyone coming and did not put out her hand. She made a turn and "* * *

went a little bit and there was the bus right close * * *." That is the first time she saw the bus. It was almost on her; it was swinging towards the alley, towards the north and west, and that is the first time she saw it. "And then the collision occurred right then." The bus was traveling north on Thirty-third Street. The "squealing" of the brakes and the "screeching" of the tires of the bus were heard some distance before the collision. It traveled from a little east of the center of Thirty-third Street in a northwesterly direction across into the mouth of the alley, and stopped with the front wheels of the bus over the north curb of the alley in the parking, and the rear wheels of the bus against the north curb of the alley. A person about 75 feet from the accident heard no horn sounded by the bus, heard the "squeaking of the brakes," saw the right front of the bus hit appellant as she was entering the mouth of the alley. It was a clear day and the pavement was dry. Appellant was thrown from her bicycle and was lying in the gutter unconscious after being struck by the bus. There were skid marks back of the bus from the rear wheels a distance of 60 to 65 feet. The bus at the time of the accident was traveling in excess of 40 miles an hour. At a speed of 25 miles an hour a vehicle would travel 37½ feet per second, and at a speed of 40 miles an hour would travel 60 feet per second. The average reaction time of a professional driver, such as a bus driver, is approximately five-eighths of a second. At a speed of 40 miles an hour, the bus would travel about 37 feet in five-eighths of a second, or during the reaction time. A bus of the type involved in this accident traveling at 25 miles an hour could be stopped in 25 feet from the time the brakes were applied, and to this should be added the reaction time of 22 feet. An ordinance of the city of Omaha limited speed at the location involved so as not to endanger any person, and in no event in excess of 25 miles an hour.

Appellant received a fracture of the middle fossa of

the skull, a cervical fracture in the neck of the right humerus, concussion of the brain, injury to her right shoulder, cut in the ear, pavement burn, and bruises on her body.

The appellant was about three months past 11 years of age, and cannot be charged with the degree of caution required of an adult in guarding against possible accidents while traveling upon and crossing a street in a city. There is no arbitrary rule fixing the time at which a child during its minority may be declared wholly capable or incapable of understanding and avoiding dangers to be encountered while engaged in such an activity. It is generally considered that such a question is one of fact to be decided by a jury. Whether or not negligence may be attributed to a child of such tender years is usually a matter for a jury under the circumstances of each case. It is only in an extreme situation where the facts show plainly knowledge and appreciation of the danger to be incurred, if certain action is had, that a court may decide as a matter of law that a child of such an age was guilty of negligence, or that his act or omission was the proximate cause of the happening in question. It was a question for the jury whether or not the appellant, a child slightly more than 11 years of age, was or could be negligent, and whether or not any act or omission on her part was the proximate cause of the collision. Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499; Rule v. Claar Transfer & Storage Co., 102 Neb. 4, 165 N. W. 883; Chicago, B. & Q. R. R. Co. v. Russell, 72 Neb. 114, 100 N. W. 156; Kauffman v. Fundaburg, 123 Neb. 340, 242 N. W. 658; McKinney v. Wintersteen, 122 Neb. 679, 241 N. W. 112; Siedlik v. Schneider, 122 Neb. 763, 241 N. W. 535.

The conduct of appellant as shown by this record should not, her age considered, conclusively bar her right of recovery, conceding that she was a bright, intelligent girl; had lived in Omaha and had on occasions ridden bicycles on the streets for two years; and was as

familiar with the operations of vehicles and bicycles on the street as any girl of her age and discretion would usually be. She doubtless knew that there was danger of injury in traveling in the street and in turning to the left to cross the street. Nearly any child of her age would answer, if asked, that it knew if it fell in the river it might be drowned; if it fell in the fire it would be burned; or if it got in the way of a streetcar or a motor vehicle it would be injured and possibly killed; but mere childish knowledge of everyday things does not necessarily establish that they appreciate or understand the necessity for keeping away from, or not doing these things. They act on impulse, and often the greater the danger, the greater the challenge. They do dangerous things without thought of the consequences that may follow what they do, and to conclude as a matter of law that a child of such an age as the appellant should be held to the high standards demanded of adults in looking after their own and the safety of others is opposed to good judgment and sound law. The infant is favored by the law not so much on his lack of knowledge as because of indiscretion, imprudence, lack of judgment, and impulsiveness.

What is required of an infant is the exercise of that degree of care which an ordinary prudent child of the same capacity to appreciate and avoid danger would use in the same situation. Smith v. Smith-Peterson Co., 56 Nev. 79, 45 P. 2d 785, 100 A. L. R. 440; Sadlowski v. Meeron, 240 Mich. 306, 215 N. W. 422; Hackert v. Prescott, 165 Minn. 134, 205 N. W. 893; Annotation, 107 A. L. R. 4; Annotation, 174 A. L. R. 1174; Collins v. Weise, 110 Neb. 552, 194 N. W. 450; 45 C. J., Negligence, § 552, p. 998.

Appellee urges Johnston v. New Omaha Thomson-Houston Electric Light Co., 78 Neb. 24, 110 N. W. 711, on rehearing, 78 Neb. 27, 113 N. W. 526, 17 L. R. A. N. S. 435, in justification of the conclusion of the trial court that the negligence of appellant was more than slight.

That case concerned an extreme situation, and the facts considered have no similarity to those of this case. That case was decided more than 40 years ago, has not since been referred to or cited by this court as an authority, and in Rule v. Claar Transfer & Storage Co., *supra,* the writer of the opinion considers it an exception to the general rule, and that its doctrine should not be further extended.

Appellee contends that the proximate cause of the collision was the act of appellant in turning to her left without giving a signal of her intention in that regard, and that her conduct was negligence more than slight. If it had been established that the appellant was of full age and discretion, and that her conduct was a violation of an ordinance or a statute, it would not have amounted to negligence as a matter of law. It would have been only a fact or circumstance to have been considered by the jury with all the other evidence in the case. The violation of a safety regulation established by ordinance or statute is not negligence as a matter of law. Melcher v. Murphy, 149 Neb. 541, 31 N. W. 2d 411; Rule v. Claar Transfer & Storage Co., *supra;* Dickman v. Hackney, 149 Neb. 367, 31 N. W. 2d 232.

There is evidence tending to establish that appellant looked for traffic on Thirty-third Street when she entered thereon from Lincoln Boulevard, and there was none within the distance of her vision; that a user of Thirty-third Street traveling north had a clear vision of the street from the intersection of Cuming Street to the place of the collision on the west side of Thirty-third Street at the entrance of the alley north of Lincoln Boulevard, a distance of about 453 feet; that the only traffic on the street at the time of the collision was the bus and the bicycle; that each of the parties was traveling near the west side of the east lane of travel; that the speed of the bus was at least 40 miles an hour immediately before and at the time of the collision; that the maximum speed permitted on the street by an ordinance of

the city of Omaha was 25 miles an hour; that the bus traveled more than 100 feet after its driver knew that appellant was making a left-hand turn and was crossing to the west side of the street; that it was a clear, bright day and the pavement was dry; that it was upgrade north from Lincoln Boulevard; that the bus gave no warning as it approached appellant; and that the right front of the bus collided with appellant as she was entering the mouth of the alley on the west side of Thirty-third Street.

It is, with exceptions not applicable to this case, negligence for a motorist to drive a motor vehicle on a public highway, at any time, at a speed or in such manner that it cannot be stopped, its course changed or varied in time to avoid a collision with an obstruction discernible within the range of his vision ahead. Nothing will excuse his failure to see what is plainly in sight. If he does not see, then it must be concluded that he was not alert to the situation, and if he saw and did not avoid a collision, it must be held that he did not have required control, and in either event a finding of negligence is permissible. Most v. Cedar County, 126 Neb. 54, 252 N. W. 465; Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106; Tews v. Bamrick, *supra;* Campbell v. Slater, 127 Neb. 231, 254 N. W. 897; Annotation, 87 A. L. R. 900.

Appellee refers to cases of this and other jurisdictions where the complainant suddenly and without means of notice to the motorist placed himself in a position of peril in the course of travel of a motor vehicle, and recovery was denied. These presented happenings where there was no opportunity for the operator of the vehicle to act and prevent a collision; and these were inevitable because of the suddenness of the appearance of the victim and the proximity to the moving machine. Unavoidable accident, at least so far as the driver was concerned, describe these happenings. In these cases speed, absence of signal of approach, failure of lookout, or lack of control was not the cause, proximate or remote, of the accident.

Appellee points to controversies in which courts have approved submission to a jury for determination of whether or not a motorist saw or should have seen the infant and avoided the collision by retarding speed, stopping, changing his course; having his vehicle under better control, or giving a warning of his approach, and the like. A detailed review of these cases is not justified or necessary. The distinction emanates from a determination of whether or not the time and space available was under the circumstances sufficient to permit the collision to be avoided by the exercise of reasonable care and action. If the situation is created so quickly that the motorist has no opportunity to avoid doing injury, there is no liability, but if he has time within which an ordinarily careful and prudent person could and would avoid inflicting damage, the problem of whether or not his acts or omissions were negligent, or the proximate cause of the damage, is for a jury.

Appellant was also entitled to have this case submitted to the jury under the humanitarian rule or the "last clear chance" doctrine which is, in this state, as applied to the situation here presented, that when a motor bus operated by a transportation company collides with a person causing her injury, liability arises when the peril is discovered by the operator of the bus, or, by the exercise of ordinary care and caution, could have been discovered in time to have avoided the injury, if at the time of the collision no negligence of the injured person was active or a contributing factor to the accident. Wilfong v. Omaha & C. B. St. Ry. Co., 129 Neb. 600, 262 N. W. 537; Whitehouse v. Thompson, 150 Neb. 370, 34 N. W. 2d 385.

The evidence is sufficient to support a finding that the acts of appellant were not the proximate cause of the collision, and that the appellee negligently injured the appellant. The trial court should not have dismissed the case.

REVERSED AND REMANDED.