ROBERT KIMBERLIN AND MARIE KIMBERLIN, HUS-BAND AND WIFE, APPELLANTS, v. WILLIAM P. LEAR AND RENO/STEAD DEVELOPMENT CO., RESPONDENTS.

No. 6756

September 7, 1972                    500 P.2d 1022

[Rehearing denied October 13, 1972]

*Echeverria & Osborne,* of Reno, for Appellants.

*Vargas, Bartlett & Dixon,* of Reno, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

The district court dismissed this wrongful death action against William P. Lear and Reno/Stead Development Co., two of several joined defendants, for the failure of the plaintiffs to state a claim upon which relief could be granted, and found no just reason to delay the entry of appropriate judgments. This appeal followed.

The plaintiffs-appellants are the parents of two children, ages seven and nine, who drowned in a natural body of water on land owned on the day of their accidental deaths by Land Developers, Inc., another defendant against whom this action remains pending. During the Spring of 1969, a dry lake bed,

comprising some 56 acres, had become covered with muddy water from the winter's runoff forming a lake two to four feet deep. In August 1968, several holes, about twenty feet square and fifteen feet deep, were dug in the dry lake bed to test the water table. This was done with the knowledge and consent of William P. Lear who then owned the property.

About six days after Mr. Lear had conveyed the property to Land Developers, Inc., the plaintiffs' two children were wading in the lake without permission and drowned in one of the test holes. Their claim for relief is premised solely upon the doctrine of attractive nuisance. No other basis for liability is asserted.[1]

This court has neither adopted nor rejected the attractive nuisance doctrine. We have mentioned it. Smith v. Smith-Peterson Co., 56 Nev. 79, 45 P.2d 785 (1935); Orr Ditch Co. v. Justice Ct., 64 Nev. 138, 178 P.2d 558 (1947). It is best defined in Rest. Torts 2d, Sec. 339 quoted below.[2] Liability may be fastened upon the possessor or occupier of the land if (a) the place where the condition is found is one upon which the possessor knows or has reason to know that children are likely to trespass, (b) the condition is one which the possessor should recognize as involving an unreasonable risk of harm to such children, (c) the child, because of his immaturity, either does not discover the condition or does not in fact appreciate the danger involved and, (d) the utility to the possessor of maintaining the condition must be slight as compared with the

---

[1]Following the dismissals the plaintiffs-appellants, by a motion for rehearing, sought to have the district court consider NRS 455.010 regarding the duty to safeguard shafts, excavations, or holes, as a possible basis for liability. On the same day, however, they also filed a notice of appeal to this court. Since it is clear from the record that the district court did not rule upon the application of that statute to the circumstances of this case, we shall not consider the point. Britz v. Consolidated Casinos Corp., 87 Nev. 441, 488 P.2d 911 (1971).

[2]Rest. Torts 2d, Sec. 339: "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in inter-meddling with it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

risk to children. Prosser, Law of Torts, 368–376 (4th ed. 1971). It is apparent that these preconditions to liability usually involve factual determinations which may not be resolved at the pleading stage of litigation.

In the case at hand, however, the district court apparently was persuaded that the attractive nuisance doctrine could not apply to fix liability upon either William P. Lear or Reno/ Stead Development Co., since neither defendant possessed nor occupied the land at the time of the tragic drownings. The possessor was Land Developers, Inc.[3] A vendor of real property who parts with title, possession and control of it ceases to be either an owner or an occupier, and generally, all responsibility for the condition of the land shifts to the purchaser. An exception to this proposition does exist. A vendor is under a duty to disclose to the vendee any concealed conditions known to him which involve an unreasonable danger to the health or safety of those upon the premises and which he may anticipate that the vendee may not discover. The failure to make such disclosure may impose liability upon the vendor for injury resulting from such conditions to others upon the land with the consent of the vendee. Rest. Torts 2d, Sec. 353.[4]

Although the plaintiffs-appellants seek refuge in this exception, it cannot avail them since their children were trespassers

[3]Rest. Torts 2d, Sec. 328E: "A possessor of land is (a) a person who is in occupation of the land with intent to control it or (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)."

[4]Rest. Torts 2d, Sec. 353: "(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if (a) the vendee does not know or have reason to know of the condition or the risk involved, and (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk. (2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."

upon the land of Land Developers, Inc., and were not there present with the consent or in the right of that company. Cf. Belote v. Memphis Development Co., 346 S.W.2d 441 (Tenn. 1961); A–F Corporation v. Caporaletti, 240 F.2d 53 (U.S. App.D.C. 1957); Derby v. Public Service Co., 119 A.2d 335 (N.H. 1955); Southern v. Floyd, 80 S.E.2d 490 (Ga.App. 1954); Herzog v. Capital Co., 164 P.2d 8 (Cal. 1945).

Affirmed.

BATJER and MOWBRAY, JJ., concur.

ZENOFF, C. J., with whom GUNDERSON, J., agrees, dissenting:

Appellants assert that Lear created an attractive nuisance and therefore a cause of action is stated. At this stage of the game we believe that Lear should be held to answer because having caused the holes to be drilled he has a responsibility to inform his vendees that they existed.

Apparently, Nevada has not yet adopted the doctrine of attractive nuisance, Smith v. Smith-Peterson Company, 56 Nev. 79, 85, 45 P.2d 785 (1938), but has referred to it in that case and in Orr Ditch Co. v. Dist. Ct., 64 Nev. 138, 178 P.2d 558 (1947).

The rule is stated in Restatement of the Law of Torts 2d § 339:

> "§ 339.  Artificial Conditions Highly Dangerous to Trespassing Children
>
> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
>
> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
>
> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
>
> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
>
> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

We would adopt the doctrine as stated in the Restatement and join the majority of states. See W. Prosser, Trespassing Children, 47 Cal.L.Rev. 426 (1959); Restatement of the Law of Torts 2d Appendix § 339.

Putting aside for the moment the fact that Lear was not the possessor of the land (Restatement of the Law of Torts 2d § 328E), the question as to whether a body of water constitutes an attractive nuisance must be resolved. This court in *Orr Ditch,* supra, at 167, stated that, "the mere presence of a body of water, such as a pond, or creek, or a conduit such as a canal or ditch, is held by the great majority of the authorities not to be an attractive nuisance."

Although this position is followed in many instances (see Atchison, T. & S. F. Ry. Co. v. Powers, 206 Okl. 322, 243 P.2d 688 (1952); Mellas v. Lowdermilk, 58 N.M. 363, 271 P.2d 399 (1954); Jones v. Comer, 374 S.W.2d 465 (Ark. 1964)), we believe the better rule, developed in California, to be that Restatement § 339 prevents arbitrary categorization based on type of condition involved (see King v. Lennen, 53 Cal.2d 340, 348 P.2d 98 (1959), where a small artificial swimming pool was held to be an attractive nuisance).

The problem with the instant case is that the boys had to wade through a natural lake or pond to find the artificial hole which was dangerous because of its unexpected depth. Annot., Liability of landowner for drowning of child, 8 ALR2d 1254, 1294, § 36 "Holes or ledges under water."

As stated by the Florida Court of Appeals in Ansin v. Thurston, 98 So.2d 87, 88 (Fla.App. 1957), there is an exception to the rule that a pond of water is not an attractive nuisance, viz: ". . . the owner of an artificial body of water is not guilty of actionable negligence on account of drowning therein unless it is constructed so as to constitute a trap or unless there is some unusual element of danger lurking about it not existent in ponds generally." See also Allen v. William P. McDonald Corporation, 42 So.2d 706 (Fla. 1949).

In the instant case, the boys were wading out into a lake on a formerly dry bed with a very even bottom. Suddenly they fell into a large obscured hole. We would note the exception to the general rule provided the other requirements of § 339 are met by proof at trial.

Considering, as we do for purposes of this appeal that facts

can be elicited to prove up the requirements of § 339 and the exception heretofore noted, there remains the problem and fact that Lear was not the possessor of the land.

As a general rule, a vendor of land is not subject to liability for physical harm caused by any dangerous condition to his vendee or others while upon the land after the vendee has taken possession, whether natural or artificial, which existed at the time that the vendee took possession. Restatement of Torts 2d § 352; Annot., Liability of vendor or grantor of real estate for personal injury to purchaser on third person due to defective condition of premises, 8 ALR2d 218 (1949), where it is pointed out that under the prevailing rule a vendor is not liable for injuries to the purchaser or third party lawfully there resulting from the existing defective condition of the premises conveyed. All obligations generally cease at the time of sale and transfer of possession. Porter v. Miller, 24 Ill.App.2d 424, 164 N.E.2d 601 (1960); Conway v. Epstein, 49 Ill.App.2d 290, 200 N.E.2d 16 (1964); cf. Wiles v. Assoc. of Commerce of Decatur, 332 Ill.App. 375, 75 N.E.2d 526 (1947); and Copfer v. Golden, 135 Cal.App.2d 623, 288 P.2d 90 (1955).

"But, where the vendor knows of a dangerous condition upon the land and knows or should realize that the vendee has no knowledge of the condition and probably would not discover it or its potentiality for harm, the vendor owes the affirmative duty to disclose the condition and to warn the vendee of its danger, and if he fails to do so, he becomes subject to liability to the vendee and others upon the land with the consent of the vendee for any physical harm caused by the condition after the vendee has taken possession of the land." Gasteiger v. Gillenwater, 57 Tenn.App. 206, 417 S.W.2d 568, 571 (1966); Restatement of the Law of Torts 2d § 353.[1]

---

[1]§ 353. Undisclosed Dangerous Conditions Known to Vendor

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involved unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

Other than the factual questions raised by § 353 to be determined at trial, respondent both in its brief and oral argument stress that no case has been found, and we have found none, wherein the vendor has been held liable over to a trespassing child or his parents. However, the attractive nuisance itself is the "invitation" which shields the children from being actual trespassers and they are in law incapable of trespassing. Perry v. Tonopah Mining Co., 13 F.2d 865, 867 (D. Nev. 1915).

Therefore, accepting the facts in the light most favorable to appellants, they have established a cause of action against William P. Lear. As to Reno/Stead Development Company, similarly, a cause of action has been stated in view of the above should the facts be as stated by appellants. The matter must go to trial to litigate whether Lear passed on to his buyer the information of the excavation that caused the death of the two boys. We view NRS 455.010[2] as implying a continuing responsibility upon persons who may have lost the right of possession, authority or power to barricade the holes or inform the buyer that they exist. Jones v. Billings, 289 A.2d 39 (Me. 1972). Furthermore, NRS 455.010, being couched in disjunctives, places the responsibility to safeguard not only upon those in possession, but upon anyone in or out of possession if he has created a hole.

We dissent.

---

[2]455.010 *Erection of fences, safeguards around shafts, excavations required.* Any person or persons, company or corporation, who shall dig, sink or excavate, or cause the same to be done, or being the owner or owners, or in the possession under any lease or contract, of any shaft, excavation or hole, whether used for mining or otherwise, or whether dug, sunk or excavated for the purpose of mining, to obtain water, or for any other purpose, within this state, shall, during the time they may be employed in digging, sinking or excavating, or after they may have ceased work upon or abandoned the same, erect, or cause to be erected, good and substantial fences or other safeguards, and keep the same in good repair, around such works or shafts, sufficient to guard securely against danger to persons and animals from falling into such shafts or excavations.