CHICAGO, BURLINGTON and QUINCY RAILROAD COMPANY
v. LEWIS RUSSELL.

FILED JUNE 9, 1904. No. 13,520.

1. **Infants: NEGLIGENCE: QUESTION FOR JURY.** No arbitrary rule can
be established to fix the time at which a child, during its minor-
ity, may be declared wholly capable or incapable of understanding
and avoiding dangers to be encountered upon railroad tracks.
Ordinarily, such question is one of fact for the jury.

2. **Injury: EVIDENCE.** Where a freight train is stopped across a village
street and sidewalk near the depot for the period of 20 or 30
minutes, and there is an opening of 2 feet between the hind car
of the freight train and a stationary car on the side track, about
15 feet from the sidewalk, in an action for injuries sustained
while passing through this opening, it is proper to show that
plaintiff saw others crossing through this opening ahead of him,
and that it was the custom of the railroad company, for a long
time prior thereto, to make openings of a similar character
through freight trains similarly situated, for the purpose of
showing a license or invitation of the railroad company to the
public to pass through this opening.

3. **Negligence: QUESTION FOR JURY.** Where the hind car of a freight
train projects over and across a public crossing, and remains in
this condition for a period of 20 or 30 minutes, and a large num-
ber of people are at the depot, and, necessarily, pass around the
rear end of the car in going to and from the depot, it is for the
jury to determine whether it is actionable negligence for the
railroad company to start its train with a backward motion,
without giving a special warning before doing so.

4. **Evidence examined, and *held* sufficient to sustain the judgment of
the trial court.**

ERROR to the district court for Richardson county:
JOHN S. STULL, JUDGE. *Affirmed.*

*Francis Martin, O. J. Weaver, J. W. Deweese* and *Frank
E. Bishop,* for plaintiff in error.

*E. Falloon, John Gagnon* and *C. Gillespie, contra.*

OLDHAM, C.

Rulo, Richardson county, Nebraska, is a town of about 900 inhabitants, situated on the banks of the Missouri river, and traversed from east to west by the main line of the Chicago, Burlington & Quincy Railroad Company. The greater number of the inhabitants reside south of the tracks of such company. There are three side tracks and the main line track of this company on the north side and one side track called the "house track" on the south side of the depot. Third street runs north and south from the southern boundary of the town to the depot, and is one of the mainly traveled streets of the village. There is a sidewalk on the west side of this street leading immediately to the depot platform, and east of this sidewalk is the traveled street. At the time of the occurrence of the injury on which this cause of action is founded, there was a freight train consisting of an engine and ten or twelve cars in the yards at the station between 4 and 5 o'clock in the evening. This freight train, which was switching in the yards, left its caboose upon one of the tracks north of the depot and backed in on the south or "house track" for the purpose of allowing two passenger trains, each going east, to proceed on the main track. When the freight train backed in on the "house track," its hindmost car extended over and beyond the sidewalk on the west side of the street leading to the depot for a space of about fifteen feet, and the train then consisting of an engine and ten cars all coupled together completely blocked the passage both on the street and the sidewalk leading to the depot. About two feet west of the hindmost car of the freight train was a string of seven or eight cars which had been previously backed in on this "house track" to an elevator west of the sidewalk, so that when the train stood in the position it occupied at the time of the injury, there was a space of about two feet between the rear car of the freight train and the foremost car in the string of cars remaining stationary on the track. The freight train re-

mained in this position for some twenty or thirty minutes during the time the passenger trains were arriving and departing over the main line track on the north side of the depot.

Plaintiff, a boy twelve years of age, who brings this action by his next friend, came up the sidewalk on Third street from the south to go to the depot and from there to his home in the northwest portion of the village; and when he found the passage blocked on the sidewalk by the freight cars, according to the testimony offered on his behalf, he turned and went around the rear car attached to the freight train, and attempted to pass through the space between this car and the stationary car west of it, and while doing so, the freight train, in preparing to move forward to open the way, first slackened back, as one of the witnesses described it, for the purpose of loosening the brakes, and when it had done so, it caught the hand of plaintiff between the drawhead on the hindmost car of the freight train and the drawhead of the stationary car standing on the track, and inflicted a severe injury to plaintiff.

The material allegations of negligence relied upon by plaintiff in his petition are as follows:

"That plaintiff further alleges that on the 19th day of December, 1898, the said railroad company, through its agents and employees, had a freight train which stopped at said station on a side track for the purpose of allowing another train to pass. That the defendant railway company at that time, negligently, wrongfully and unlawfully obstructed the usual public travel on Third street across said line at said station for about thirty or forty minutes with its freight train of cars. That persons going to and from said station on Third street objected to the unlawful closing of Third street, upon which objection, the defendant railway company disconnected and separated two of the cars of said freight train about two feet apart at or near the sidewalk of said street leading to said station, for the purpose of allowing the foot travelers to cross the

railway track of the defendant. Between the opening of said train, the travel, on invitation of defendant, was resumed at or near said sidewalk between the cars. That during the time said two cars of said train were disconnected and separated and the travel was resumed-on said sidetrack through the opening thus made, this minor plaintiff, a child of immature years, on said date and without fault on his part, started from the south side of said train on said line of travel to go home through said opening in said freight train, and while attempting to do so, the defendant railway company by its agents and employees, without warning, negligently and wrongfully and without stationing a guard at said opening to warn the public passing through the opening of said train of cars when the opening in the cars would be closed, negligently, wickedly and violently, by means of the engine attached to said train, closed the opening in said train of cars, catching the plaintiff between the drawheads of said detached portion of the train, severing the second finger of the right hand and violently throwing plaintiff to the ground."

Defendant's answer was, in substance, a general denial and a plea of contributory negligence. On the issues thus joined, there was a trial to a jury in the court below, a verdict for plaintiff for one thousand dollars, judgment on the verdict, and defendant railroad company brings error to this court.

When the case was submitted to the jury, special findings of fact were returned at defendant's request. These findings, we think, are all fully supported by the testimony, and are as follows:

"1. Did the freight cars stand over and across the sidewalk and wagon road when Lewis (plaintiff) came to them from the south? Answer, Yes.

"2. Were the cars continuous and connected to each other from the sidewalk east to the engine? Answer, Yes.

"3. Was there any open space left between the cars within the limits of the sidewalk? Answer, No.

"4. Was there any open space between the cars west of the sidewalk? Answer, Yes.

"5. If there was an open space between the cars west of the sidewalk, was it caused by space accidentally left between the cars backed in and other cars standing on the house track? Answer, Yes.

"6. If there was an open space, how far was it west of the sidewalk, and how wide was such space? Answer, 15 feet west from sidewalk. Opening two feet.

"7. Was Russell (plaintiff) hurt while trying to cross the track through such open space, or. by attempting to cross under the train? Answer, Open space.

"8. Was Lewis Russell (plaintiff) negligent in attempting to cross the track while the cars were in his way? Answer, No."

There is no complaint concerning the sufficiency of the testimony to support any of these findings except the last. With reference to this finding it is urged that, under all the testimony touching on the occurrence of the injury, plaintiff was clearly guilty of contributory negligence in attempting to pass between these two cars. With this contention, however, we cannot agree. While, as we shall presently point out, there was much material evidence offered by plaintiff wrongfully excluded by the trial court, yet, under the evidence admitted, we think the question of plaintiff's negligence was properly one of fact for the jury. The evidence admitted tended to show, that there was an extraordinary crowd at the depot on the evening that the accident took place, because it was expected that the body of a soldier who had died in the Philippines would be returned to that place on one of the evening trains for burial, and on that account a large number of people congregated at the station. It was also in evidence that one other person had passed through the opening in which plaintiff was injured five or ten minutes before him, and it was undisputed that the crossing and street were blocked by the freight train for from twenty to thirty minutes before the injury was inflicted. Under this state of the

testimony, and in view of the fact that plaintiff was a boy of only twelve years of age and should not be charged with that high degree of caution which would be expected of an adult in guarding against possible accidents at a railroad crossing, we think that the special finding of the jury on this question was supported by sufficient evidence. The authorities are uniform on the proposition, that no arbitrary rule can be established to fix the time at which a child, during its minority, may be declared wholly capable or incapable of understanding and avoiding dangers to be encountered upon railroad tracks. *Burger v. Missouri P. R. Co.*, 112 Mo. 238, 20 S. W. 439; *Western & A. R. Co. v. Young*, 81 Ga. 397, 7 S. E. 912; *Eswin v. St. Louis, I. M. & S. R. Co.*, 96 Mo. 290; *Plumley v. Birge*, 124 Mass. 57; *Meibus v. Dodge*, 38 Wis. 300; *Cooper v. Lake Shore & M. S. R. Co.*, 66 Mich. 261, 33 N. W. 306.

But now conceding, as we do, that each of these special findings of fact are supported by competent evidence, was there and is there sufficient evidence in the record to sustain the allegation of plaintiff's petition as to defendant's negligence occasioning the injury? Conceding as we must, that defendant was negligent in obstructing the sidewalk and crossing for the length of time which it did, there is another essential link in the chain of casualty between this negligent act in obstructing the sidewalk and crossing and a legal liability for the injury inflicted; and this link is the duty, if any, defendant owed plaintiff and the public to give them a special warning before the train was started with a backward motion. There is no dispute as to the bell having been rung or the whistle blown before the train started; this warning, however, would not be sufficient notice to avoid liability for backing over a public crossing or closing an opening left near a public crossing through which the public had been invited by the action of defendant to pass. *Burger v. Missouri P. R. Co., supra; Barkley v. Missouri P. R. Co.*, 96 Mo. 367, 9 S. W. 763; *Philadelphia, B. & W. R. Co. v. Layer*, 112 Pa. St. 414, 3 Atl. 874.

But the difficulty here arises in determining whether the evidence admitted by the lower court, in the case at bar, is suffcient to show that the defendant owed the duty of a special warning to plaintiff or anyone else passing through the opening above referred to. When plaintiff testified in answer to a question of his counsel that he had seen others pass through this opening, his answer, on motion of counsel for defendant, was stricken out; plaintiff's counsel then offered to prove by plaintiff that he had seen others passing through this opening, and that for a long time it had been the custom of defendant to make an opening between its freight cars on this particular track, for the purpose of allowing the public to pass through to the depot when the freight train was on the "house track." This offer was denied, as were similar offers from other witnesses, so that the only evidence admitted touching on this question was that of plaintiff, that he himself attempted to pass through this opening when he was caught and injured, and by one other witness, who said that he had passed through the opening safely some eight or ten minutes before the injury occurred.

It is in evidence, and found to be true by the jury in their answer to the fifth special finding, that this opening was left accidentally and not intentionally by the railroad company, so that, to charge defendant with the duty of giving a special warning to the public at this place before starting the train, even with a backward motion, we think it was necessary that proof should have been admitted tending to show an invitation to travel at and through the opening sufficient to charge the defendant's agents with knowledge of such fact. That evidence of this nature is material in cases of this character, is established by an unbroken line of authorities, some of which have already been cited herein on other questions involved in this controversy, and in addition to these may be cited, *Atchison, T. & S. F. R. Co. v. Cross,* 58 Kan. 424, 49 Pac. 599; *Thurber v. Harlan B., M. & F. R. Co.,* 60 N. Y. 326.

The question then arises as to whether, notwithstanding the erroneous rulings of the district court on testimony offered by plaintiff, there is still sufficient evidence in the record to show that the railroad company should have given a special warning to passersby at the rear end of its train before starting with a backward motion. It is in evidence that there was a large crowd at the depot just before the accident occurred, and that most of the travel to the depot was over the sidewalk, which was obstructed by the train of cars. It is undisputed that one car stoo1 over the sidewalk for about 20 or 30 minutes before the accident occurred. It is also in evidence that the mail carrier notified the conductor of the freight train, who was standing on the platform of the depot, to move the train from the crossing, so that the mail wagon could pass. It was testified by the defendant's witness Jackson, that he saw people passing through the opening between the cars before the plaintiff's injury; that defendant's brakeman, Dentner, while passing along the line of freight cars a few minutes before the injury, saw the opening between the cars.

After considerable hesitation we have concluded, from this testimony, that there is sufficient evidence in the record to charge plaintiff with the duty of giving a special warning at the rear end of its train before putting it in motion with a backward movement. It seems to us, in view of the special finding of the jury, that the case stands, so far as the liability of the defendant is concerned, as though there had been no cars on the sidetrack and defendant had merely backed one of its cars over the crossing for a distance of 15 feet and permitted it to remain there for 20 or 30 minutes when a large number of people were congregating at the depot, and necessarily passing backward and forward around the cars; and this, too, when the agents in charge of the train were in a position where they should and must have known of these surroundings. It seems clear, under the authorities heretofore cited, that defendant did owe a duty both to plaintiff and to the

public to give a warning before starting its train with a backward motion under such conditions.

We therefore conclude that the evidence is sufficient to sustain the judgment, and, finding no reversible error in the record, we recommend that the judgment of the district court be affirmed.

AMES, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.