LARRY BEAR, BY LAWRENCE F. BEAR, HIS FATHER AND NEXT FRIEND, APPELLEE, V. ROY ALBERT AUGUY, APPELLEE, IMPLEADED WITH CHECKER CAB COMPANY, APPELLANT.

83 N. W. 2d 559

Filed June 7, 1957. No. 34123.

*Gross, Welch, Vinardi & Kauffman,* for appellant.

*Lyle Q. Hills,* for appellee Bear.

*Abrahams & Kaslow,* for appellee Auguy.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff brought this action by his father as next friend in the district court for Douglas County against Roy Albert Auguy and Checker Cab Company, defendants, to recover damages for personal injuries sustained by Larry Bear as a result of a collision between a motor bicycle he was riding and a taxicab owned by the defendant Checker Cab Company and driven by one of its employees. Defendant Roy Albert Auguy was made a defendant on the theory that he was the owner of a dog allegedly chasing Larry Bear at the time of the accident. The case was tried to a jury resulting in a verdict in favor of the defendant Roy Albert Auguy and the plaintiff, and against the defendant Checker Cab Company on two causes of action, fixing the amount of recovery on the plaintiff's first cause of action in the sum of $5,000 and on the second cause of action in the sum of $2,500. Judgment was entered on the verdict. The defendant Checker Cab Company filed a motion for judgment notwithstanding the verdict or, in the alternative, motion for a new trial on both causes of action, and for remittitur in the amount of $1,355.90 on the second cause of action. The motion for judgment notwithstanding the verdict was overruled and the plaintiff was ordered to remit $1,355.90 on the second cause of action. The remittitur was made by the plaintiff, and thereupon the motion for a new trial as to the plaintiff's second cause of action was overruled. From the orders overruling

the motion for judgment notwithstanding the verdict and motion for new trial, the defendant Checker Cab Company appealed. The plaintiff cross-appealed from the order of the trial court requiring him to file a remittitur.

For convenience we will refer to the parties as designated in the district court, to the plaintiff on occasions as Larry; to one of the plaintiff's witnesses, Leroy Christensen, as Leroy; and to the taxicab here involved as the cab.

The plaintiff's petition charged the defendant, whose employee was driving its cab, with negligence that constituted the proximate cause of the injuries sustained by Larry Bear as follows: (1) In failing to swerve or to stop his cab in time to avert a collision; (2) in driving at a speed in excess of what was reasonable and prudent under the conditions then existing; and (3) in failing to observe the plaintiff when he saw or in the exercise of ordinary care should have seen the plaintiff in time to have averted a collision.

In the second cause of action the plaintiff alleged that his father was required to expend money for medical and hospital expenses in order to attempt to cure him of injuries, and will in the future be required to go to further expense for the same; and that the father had assigned his claims for all such expenses to the plaintiff. The plaintiff asked for judgment on this cause of action in the amount of his father's loss and future medical and hospital expenses which will be necessary in order to attempt to cure the plaintiff's disability.

For answer to the plaintiff's petition the defendant Checker Cab Company denied all of the allegations contained therein which were not specifically admitted; admitted there was a collision between one of its cabs and a motor bicycle which was operated by the plaintiff; alleged that if the plaintiff suffered any injuries or damages as a result of such collision such injuries and damages were proximately caused by reason of the con-

tributory negligence of the plaintiff; and alleged that the plaintiff's negligence on such occasion was more than slight. The defendant prayed that the petition of the plaintiff be dismissed.

For reply to the answer of the defendant Checker Cab Company the plaintiff denied all allegations contained therein which were not admissions of the plaintiff's petition.

The defendant Checker Cab Company assigns as error the overruling of its motion made at the conclusion of the plaintiff's case for a directed verdict, and the overruling of the defendant's motion for directed verdict made at the conclusion of all of the evidence; that the trial court erred in failing to hold that the plaintiff was guilty of contributory negligence as a matter of law; and that the trial court erred in overruling the defendant's motion to set aside the verdict. No error is predicated on the instructions given by the trial court.

A motion for directed verdict or for judgment notwithstanding the verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. See Colvin v. Powell & Co., Inc., 163 Neb. 112, 77 N. W. 2d 900.

Where different minds may reasonably draw different conclusions or inferences from the adduced evidence, or if there is a conflict in the evidence, as to whether or not the evidence establishes negligence or contributory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to a jury. See, Pierson v. Jensen, 150 Neb. 86, 33 N. W. 2d 462; Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112.

The record discloses that I Street in South Omaha runs east and west and Twenty-third Street runs north and south. At the intersection, Twenty-third Street is

32 feet from curb to curb and I Street is likewise 32 feet from curb to curb. At the time of the accident there was a stop sign on I Street requiring traffic to stop before entering the intersection. Twenty-third Street was a favored street, and there was no stop sign requiring traffic to stop before entering the intersection. The stop sign referred to is located on the northeast corner of the intersection, 19 feet 8 inches east of the east curb of Twenty-third Street. There was a street light located on the northeast corner of the intersection, and the light was turned on at the time of the accident. The accident happened at approximately 9 p.m., on May 18, 1952. The weather was clear, it was dark, and the pavement was dry.

The plaintiff, Larry Bear, testified that on May 18, 1952, he was 14 years of age. He was a freshman at South High School. He participated in freshman football and was interested in all types of athletics. After 7 p.m., May 18, 1952, he went to the home of Leroy Christensen who had a motor bicycle, and the two of them decided to go for a ride. Larry did not have a motor bicycle but knew a friend who had one. He and Leroy went to the friend's home and Larry borrowed the motor bicycle and they both went riding around the neighborhood and through city parks. Larry testified further that he was having trouble with the motor bicycle and was unable to detect what was wrong with it. The motor was cutting out and not running as it should. He decided to take the machine to a filling station located at Twenty-fourth and I Streets, and told Leroy what he was going to do. There was an understanding that they would meet at the filling station. In taking this course, going west on I Street and approaching the alley between Twenty-second and Twenty-third Streets, he heard a noise and looked down and saw a big black dog which he described as a German shepherd. This dog was right at the back wheel of the motor bicycle and was trying to grab his leg. At

one time the dog did get hold of his trouser cuff, but Larry pulled away. He testified that he was "scared to death." The dog continued to pursue him, barking and snapping at his leg. Larry was wearing strollers which gave no protection to his legs. He further testified that as he approached the intersection of Twenty-third and I Streets the dog continued to follow him. As he passed the stop sign and got to the corner he glanced down, the dog was still there, and it chased him into the intersection. As he entered the intersection he glanced up the street and saw a car 60 to 80 feet from the intersection. He glanced again momentarily and saw another car passing the first car he had seen. When he was in the intersection he felt himself being hurled through the air. He felt a tremendous jolt as he landed on the west parking along Twenty-third Street. He was conscious, but dazed, and was taken to a hospital by a rescue squad.

On cross-examination Larry testified that the alley between Twenty-second and Twenty-third Streets runs north and south, and the dog was about 10 feet west of the alley. After he passed the stop sign he saw the dog, but he did not see it after he entered the intersection. It would take 2 or 3 seconds to cover the distance from where he first saw the dog to the intersection, which was approximately 110 feet. That was the length of time he observed the dog. When he was 10 feet from the intersection he looked north for the first time. He was traveling 15 miles an hour and maintained that speed all the way past the stop sign and into the intersection. He believed he swerved the motor bicycle to the left after he got into the intersection. The dog got hold of his pants cuff when he was at the street light. He pulled back, and that swayed the motor bicycle. He was endeavoring to avoid the dog. It made another pass at his leg after he entered the intersection. He believed he would be able to escape the dog without having a collision with the car that he saw. When

he looked to the north he saw a second pair of head-lights coming south in his direction. These head-lights were south of the first pair of headlights, and continued south. That was the car that came in contact with his motor bicycle.

Leroy Christensen, in his testimony, related the facts as testified to by Larry with reference to procuring the motor bicycle, taking a ride, and agreeing to meet at the filling station. He testified that as he approached Twenty-third and I Streets he could see to the east and saw Larry coming up the street about a block away. He could see him under the street light at Twenty-second and I Streets. At that time Leroy was on the west side of Twenty-third Street, on I Street, facing east. Larry was coming from Twenty-second Street at a rate of speed of 15 miles an hour. As Larry came toward Leroy, Leroy heard a dog barking. That was when Larry's motor bicycle was between Twenty-second and Twenty-third Streets. Leroy kept watching the motor bicycle, and as it approached the intersection and arrived at the stop sign, the street light was shining and he could see the dog. It was a German police dog. He estimated it to be 26 inches tall. The dog was to the right of the motor bicycle and a little to the rear, keeping up with the motor bicycle. At that time Leroy saw a car coming from the north, about 120 feet north of the intersection. He testified that he was at an angle and could see both Larry and the car. He saw another car pass the first car. When the second car was passing the first car, both cars were about 100 feet north of the intersection, or about even with the second house north on the west side of Twenty-third Street. Larry was just by the stop sign, about to enter the intersection. At that time the car nearest the intersection was about 80 or 85 feet north of it. He continued to watch this car until the time of the collision. The car did not swerve, but continued on straight down the street and collided with the motor bicycle Larry was riding. The

motor bicycle was more than half way across the intersection. The car was halfway into the intersection. The front end of this car struck the motor bicycle. The collision occurred under the street light and Leroy saw that a cab was involved. Larry was thrown into the air to the south and fell on the parking in front of the first house on the southwest corner of the intersection. The cab proceeded on down the street and stopped in front of the third house south of the intersection. The motor bicycle was lying alongside the curb a little south of where Larry was lying. The cab was going 40 or 45 miles an hour at the time of the impact. He heard no sound of a horn.

Sebastian Breci, a witness for the defendant, testified that on the evening of the accident he and his wife were traveling in their car on their own side of the street, followed by a Checker cab. When he was about a quarter of a block beyond H Street, the cab passed their car. It was going at a speed of 25 or 30 miles an hour. After the cab had passed their car it proceeded into its own lane down to the corner of Twenty-third and I Streets. This witness's car was traveling 20 miles an hour. This witness further testified that he saw a boy approaching the intersection when his car was 60 to 80 feet from the intersection. The boy was on a motor bicycle and was near the telephone pole under the street light on the corner. He estimated the speed of the motor bicycle to be 20 to 25 miles an hour. The cab struck the motor bicycle when it was right in the center of the intersection. The motor bicycle had traveled about 20 feet from the time he first saw the boy. He stopped his car 5 to 10 feet behind the cab. The cab was about 10 feet past the intersection. He backed his car up, went around the cab, and parked 90 feet farther down the street. He got out of his car and saw the boy lying between the curb and the sidewalk. Most of the witnesses testified that Larry was lying on the parking in front of the first house on the southwest corner of the

intersection. He further testified that he first saw the boy when he came beneath the light which is located on the northeast corner of the intersection of Twenty-third and I Streets. He saw no dog, nor did he hear a dog bark. He was able to see the boy as he was thrown through the air.

The driver of the Checker cab involved in the accident testified that the cab he was driving was a 1951 Plymouth four-door sedan. He was proceeding south on Twenty-third Street and passed a car in front of him after he had driven through the intersection of Twenty-third and H Streets. This car was going 20 to 25 miles an hour and he passed it at a rate of speed of 25 to 30 miles an hour. As he approached the intersection of Twenty-third and I Streets he glanced to the left and saw a "moving object which was more or less a flash," and then there was a collision. He further testified that he was about the length of the cab from the intersection when he first saw the flash. When the collision took place, the boy on the motor bicycle was thrown into the air from the impact, came down between the hood and fender of the cab, and rode in that position. This witness further testified that he stepped on the brakes momentarily, and when the boy came down on the cab he relaxed the brakes because if he applied them hard it would throw the boy to the pavement. He then coasted the cab until he got to the side of the curb, and the boy sort of "lunged" off the cab. The cab continued to coast south about 20 feet and was brought to a stop a distance of 90 to 100 feet south of the intersection. The front of the cab, when it came in contact with the boy, was approximately 8 feet beyond the north curbline of I Street and around 8 feet from the west curbline of Twenty-third Street.

On cross-examination this witness testified that the cab was equipped with excellent brakes; that he slowed down to 15 or 20 miles an hour after passing the other car; that he could stop the cab within a distance of 30

feet at the speed he was going; that the left window of the cab was down; and that his vision was unobstructed as he approached the intersection. He stated that he heard a dog bark, but he did not see the dog. The boy was in the intersection when he first saw him. He was not relying on the boy stopping at the stop sign, because the boy was already in the intersection. The cab at that time was 15 to 18 feet north of the intersection. The cab proceeded a distance of 150 feet before it came to a stop, and was not clear into the intersection at the time of the impact. The impact carried the boy 24 feet across the intersection and about 50 feet south of the intersection before the boy was thrown onto the parking. The motor bicycle still rested on the cab and was carried a distance of 20 feet farther south.

There is also evidence that there was a slight upgrade on I Street approaching the intersection of Twenty-third Street, and leveling off at the intersection. The speed limit at the scene of the accident was 25 miles an hour. There was a seal-beam light at the center of the handlebars of the motor bicycle Larry was riding, which was turned on.

There is evidence that there are a number of dogs in the neighborhood and several large black dogs. Just which dog was involved in this accident is not clearly shown by the record.

Before determining the assignments of error, we set forth certain rules of law applicable to this case.

Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which it would not have occurred. See Barney v. Adcock, 162 Neb. 179, 75 N. W. 2d 683.

A traveler on a highway is required to exercise reasonable care for the safety of others thereon. See Barney v. Adcock, *supra.*

"What is reasonable care does not permit of definitive statement applicable to all cases but the presence or ab-

sence of reasonable care must be determined by the facts and circumstances of each case." Barney v. Adcock, *supra*.

"The lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing." Davis v. Dennert, *supra*.

The law requires a driver of a motor vehicle to have his car under such reasonable control as will enable him to avoid a collision with other vehicles, assuming that the drivers thereof will exercise due care. Pongruber v. Patrick, 157 Neb. 799, 61 N. W. 2d 578.

The driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving even though he is rightfully on the highway and has the right-of-way or is driving on the side of the highway where he has a lawful right to be. He must keep a lookout ahead or in the direction of travel or in the direction from which others may be expected to approach and is bound to take notice of the road, to observe conditions along the way, and to know what is in front of him for a reasonable distance. See Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250.

The violation of city ordinances or statutes regulating the use and operation of motor vehicles upon the highway is not negligence per se, but evidence of negligence, which may be taken into consideration with all the other facts and circumstances in determining whether or not negligence is established thereby, and where the evidence is such that reasonable minds may draw different conclusions therefrom, the question of negligence is for the jury. See, Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612; Segebart v. Gregory, 156 Neb. 261, 55 N. W. 2d 678.

The standard of care required of a minor such as the plaintiff at the time of the accident is set forth in Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d

607. The plaintiff was 14 years and nearly 8 months of age at the time of the accident, and cannot be charged with the same degree of caution required of an adult in guarding against possible accidents while traveling upon and crossing a street in a city. There is no arbitrary rule fixing the time at which a child during his minority may be declared wholly capable or incapable of understanding and avoiding dangers to be encountered while engaged in such an activity. Whether or not negligence may be attributed to a minor of the age of the plaintiff is usually a matter for a jury under the circumstances of each case. It is only in an extreme situation where the facts show plainly knowledge and appreciation of the danger that may be incurred, if certain action is had, that a court may decide as a matter of law that a minor of such an age was guilty of negligence, or that his act or omission was the proximate cause of the happening in question. See, Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499; Rule v. Claar Transfer & Storage Co., 102 Neb. 4, 165 N. W. 883; Chicago, B. & Q. R. R. Co. v. Russell, 72 Neb. 114, 100 N. W. 156; Kauffman v. Fundaburg, 123 Neb. 340, 242 N. W. 658; McKinney v. Wintersteen, 122 Neb. 679, 241 N. W. 112; Siedlik v. Schneider, 122 Neb. 763, 241 N. W. 535.

The conduct of the plaintiff as shown by this record should not, his age considered, conclusively bar his right of recovery, conceding that he was a bright and intelligent boy, had lived in Omaha, was acquainted with the use of bicycles as most boys of his age are, and was familiar with the operation of motor bicycles having ridden thereon with other boys although this was the first occasion upon which he had operated one.

What is required of a minor is the exercise of that degree of care which an ordinarily prudent child of the same capacity to appreciate and avoid danger would use in the same situation. Smith v. Smith-Peterson Co., 56 Nev. 79, 45 P. 2d 785, 100 A. L. R. 440; Sadlowski v. Meeron, 240 Mich. 306, 215 N. W. 422; Hackert v. Pres-

cott, 165 Minn. 134, 205 N. W. 893; Annotation, 107 A. L. R. 4; Annotation, 174 A. L. R. 1174; Collins v. Weise, 110 Neb. 552, 194 N. W. 450; 65 C. J. S., Negligence, § 146, p. 789; Locklin v. Fisher, 264 App. Div. 452, 36 N. Y. S. 2d 162.

The defendant argues that Johnston v. New Omaha Thomson-Houston Electric Light Co., 78 Neb. 24, 110 N. W. 711, on rehearing, 78 Neb. 27, 113 N. W. 526, 17 L. R. A. N. S. 435, is applicable and in justification of the defendant's contention that the negligence of the plaintiff was more than slight and barred recovery on his part. That case concerned an extreme situation, and the facts considered have no similarity to those of the instant case. That case was decided more than 40 years ago, and has not since been referred to or cited by this court as an authority. In Rule v. Claar Transfer & Storage Co., *supra,* the writer of the opinion considers it an exception to the general rule, and that its doctrine should not be further extended. The same would apply to Bixby v. Ayers, 139 Neb. 652, 298 N. W. 533.

The defendant argues that the plaintiff lived in the neighborhood where there were several dogs, was acquainted with the entire area, and knew the location of the stop sign; that he chose to ride this motor bicycle, which was equipped with dual exhausts and made a loud noise that would naturally attract dogs, at a rate of speed of 15 miles an hour at night; and that the plaintiff first heard the dog at the alley between Twenty-second and Twenty-third Streets and saw the dog 10 feet west of the alley which would be approximately 110 feet east of the intersection, therefore, the plaintiff was aware of the dog's presence for at least 120 feet before he entered the intersection, and the accident occurred slightly more than half way through the intersection. The defendant further argues that Twenty-third Street is 32 feet wide, consequently the total distance traveled by the plaintiff after he was aware of the presence of the dog was at least 136 feet; that accord-

ing to the evidence of an expert, a motor bicycle traveling at 15 miles an hour would travel 22 feet per second; that during this course of travel at least 6 seconds would elapse from the time the dog started chasing the plaintiff and the time of the impact with the Checker cab; that meanwhile the plaintiff passed a stop sign and a crosswalk and made no effort to turn in either direction; that he had observed the lights of approching vehicles, was hoping to cross the intersection ahead of traffic that he knew was approaching, and ignored the stop sign; and that under such circumstances the negligence of the plaintiff was more than slight and should bar recovery on his part.

The evidence adduced by the plaintiff shows that as he approached the corner of Twenty-third and I Streets, the dog was chasing him and he was frightened. As he arrived at the corner he looked down and the dog was still there. He was at all times endeavoring to get away from the dog, but it continued to chase him right up to the intersection, snapping at his leg. As he entered the intersection, he saw a car some distance up the street, and as he got into the intersection he glanced up and saw another car passing the car he had first seen. The second car collided with him. The dog was a large police dog and looked to the plaintiff like a German sheperd. It was about 26 inches tall, and it continued to bark and snap at the plaintiff's leg during the period it was chasing him. We will not repeat, but direct attention to, the evidence of Leroy Christensen heretofore set out wherein he details his version of the facts leading up to the accident and of the accident.

The defendant asserts that there is no evidence to show that the dog was a vicious or dangerous animal; and that it was identified as the Auguy dog which the plaintiff knew and which he testified had never bitten him. Apparently the jury found the evidence insufficient to identify the dog as the Auguy dog. Just which dog was chasing the plaintiff is not clear from the

record, nor do we know if the dog was vicious or dangerous. At any rate, the plaintiff was afraid of the dog and could not anticipate that the dog would not bite him.

In addition, the plaintiff points to the evidence of the defendant's witness Breci who testified that he saw the plaintiff before the plaintiff passed into the intersection. At that time this witness was a quarter of a block north of the intersection. The cab was 15 to 20 feet ahead of him, which would be 55 to 60 feet from the intersection. The driver of the cab did not swerve the cab, but continued in a straight course. Breci attempted to stop his car, and did stop it north of the intersection. An expert witness testified that if the cab was traveling 25 miles an hour, the speed limit in this residential district, the cab could be completely stopped within a distance of 55 or 60 feet. The cab was equipped with brakes more powerful than those used in the ordinary car. The cab driver testified that he could have stopped the cab within a distance of 30 feet; that his windshield was clear; and that there was nothing obstructing his view.

The evidence in the instant case is such that reasonable minds may draw different conclusions therefrom. This being true, the questions of negligence and contributory negligence are for the jury. See, Plumb v. Burnham, *supra;* Gleason v. Baack, 137 Neb. 272, 289 N. W. 349; Anderson v. Robbins Incubator Co., 143 Neb. 40, 8 N. W. 2d 446; Pierson v. Jensen, *supra;* and other authorities previously cited.

We conclude that the trial court did not commit prejudicial error as contended for by the defendant.

This brings us to the plaintiff's cross-appeal. The plaintiff contends that the trial court erred in requiring the plaintiff to file a remittitur in the amount of $1,355.90 as against the second cause of action wherein a verdict had been obtained by the plaintiff in the amount of $2,500. We fail to find any evidence to sustain an award exceeding $1,144.10.

The trial court instructed the jury with reference to the plaintiff's second cause of action in substance as follows: For his second cause of action the plaintiff alleged that his father was required to spend money for medical and hospital expense in order to attempt to cure him of his injuries and would in the future be required to go to further expense for the same. Then the plaintiff alleged that the father had assigned his claim for all such expense to the plaintiff. The plaintiff asked for a judgment on the second cause of action in the amount of his father's loss and future medical and hospital expense which would be necessary in order to attempt to cure the plaintiff's disability.

From an analysis of the trial court's instructions, the trial court limited the jury in its consideration of the second cause of action to making an award that would compensate for medical and hospital expenses previously incurred together with prospective expenses shown with reasonable certainty in the evidence. These expenses were shown by the evidence to total $1,144.10.

The plaintiff did not attack the court's instructions and does not seek a new trial. He seeks to avoid the remittitur. The remittitur is required under the evidence.

Where the excessive amount in a judgment is subject to exact determination, a remittitur may be required as a condition of affirmance for the correct amount. See, Colvin v. Powell & Co., *supra;* Moore v. Schank, 148 Neb. 228, 27 N. W. 2d 165; Roby v. Auker, 151 Neb. 421, 37 N. W. 2d 799.

We conclude that the assignment of error raised in the plaintiff's cross-appeal cannot be sustained.

For the reasons given in this opinion, we conclude that the verdict and judgment entered thereon by the trial court should be, and is hereby, affirmed.

AFFIRMED.