DIANA J. HUMPHREY, BY HER MOTHER AND NATURAL GUARDIAN, MARY HUMPHREY, APPELLANT, V. BURLINGTON NORTHERN RAILROAD COMPANY, A CORPORATION, AND THE NATIONAL RAILROAD PASSENGER CORPORATION, ALSO KNOWN AS AMTRAK, A CORPORATION, APPELLEES.

559 N.W.2d 749

Filed February 7, 1997.    No. S-95-407.

Shelly S. Watson and John P. Inserra, of Inserra Law Offices, for appellant.

Cheryl R. Zwart and Jeanelle R. Robson, of Knudsen, Berkheimer, Richardson & Endacott, for appellee Burlington Northern.

John P. Mullen and Michael C. Pallesen, of Gaines, Mullen, Pansing & Hogan, for appellee Amtrak.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

The plaintiff-appellant, Diana J. Humphrey, a minor, by and through her mother and natural guardian, Mary Humphrey, seeks to recover for damages allegedly caused by the negligence of the defendants-appellees, Burlington Northern Railroad Company and The National Railroad Passenger Corporation, also known as Amtrak. The district court sustained the separate motion for summary judgment filed by each of the defendants on the ground that the minor had been guilty of contributory negligence in a degree sufficient to bar recovery as a matter of law, and thereby dismissed her petition. The minor appealed to the Nebraska Court of Appeals, asserting that the district court erred in so ruling. Under our authority to regulate the caseloads of the two courts, we, on our own motion, removed the matter to our docket. We now affirm.

## II. SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Moulton v. Board of Zoning Appeals, ante* p. 95, 555 N.W.2d 39 (1996).

## III. FACTS

The minor was born on October 31, 1979; thus, on September 16, 1990, she was approximately a month and a half

shy of 11 years of age. On the afternoon of that day, she was injured when trying to jump onto a moving train. Two parcels of railroad property are involved. One is the Amtrak station and its attendant platform areas. The other is the Burlington Northern property, which is immediately adjacent to the Amtrak property. Access to the Burlington Northern property can only be had by crossing the Amtrak property. Children frequently played on both properties, and on the afternoon in question, there were no guards posted to ensure that children would not play in the area. The train involved was moving on a track operated by Burlington Northern.

The minor lived with her parents, but had been visiting her aunt, Karen Lane, who lived in an apartment near the properties. The minor visited her aunt's residence every weekend or every other weekend, had just started the fifth grade, had a number of school friends, and had no trouble in school except for "just fighting and nit-picking is about all." Although she has taken some remedial classes in mathematics and reading, she has no learning problem. She was in the Girl Scouts and was involved in some church activities, including learning Bible verses each Wednesday night and participating in some camping activities. In addition, she performed household chores, such as washing the dishes and cleaning her room.

Before the accident, she "jogged around and rode bikes and stuff" for fun. She knew to look both ways before walking her bicycle across the street and knew the hand signals for turning. The minor stated that on the afternoon of her accident, she and her cousin, LaNeanne Lane, decided to ride their bicycles to a friend's house, but when the friend was not home, they went to the Amtrak station and rode around on the parking lot hills. After riding for a couple of hours, they sat on the tracks which she knew were safe because no trains used them. Sitting on the train tracks was "just something to do."

She stated that she "had always had something about trying to ride a train" and that she "tried to jump it." Riding on the side of the train "seemed like a really neat thing to do at the time." The first time she tried it, it felt to her like her arm was "ripped off" and, as it hurt, she let go. Because it hurt, she concluded that the train was "going real fast." As the result of "an instinct"

and because she "wanted to do it again," she attempted to jump onto the train a second time. She grabbed a ladder and got one foot on it, but her other foot was dragging. She fell and sustained injuries to her right foot and ankle.

A bystander, Lawrence Mazur, testified that he saw the minor make three attempts to grab the ladders on the railroad cars. According to him, the minor attempted to grab onto one of the rungs of the ladder but "spun around and let go"; when another car came by, she "grabbed that one, spun around, [and] fell down"; "on the third try, she spun around and this is when the accident occurred." According to Mazur, there was nothing unusual about the speed of the train; it was moving fairly slowly in comparison to the way trains generally move.

The mother stated that she had earlier told the minor that trains "could seriously hurt" her and that she should not "[p]lay on them when they are moving or even be on them at all." On one occasion, when the minor was 8 or 9 years old, the mother became aware that while visiting another relative, the minor and her brother had been playing around a train. The parents scolded the two of them and told them "what trains could do to them." In fact, when the minor's father learned that the minor was playing near the train, he, according to the minor's mother, "whipped her ass." The mother told the minor "something in the category that it could kill" her, that she could get "[s]eriously hurt," and that she should not "[p]lay by trains." The mother also recounted as an example for the minor a story about a child with whom the mother had attended school. The child had crawled underneath a train and had an arm cut off when the train moved. Indeed, the mother was surprised when the minor's accident occurred because she thought that what she had told the minor before "would have sunk in."

In response to questioning about what kind of harm the minor thought could result if she was on the tracks, she testified,

> Well, if a train comes — and you are sitting on a track — and you don't really know it, you can really get hit, but if you can get off that train track in time, you really couldn't get injured.

> Other things could happen to where a train could hit you head on, and you could really fly, and you could probably die.

The minor said she knew this at the time of the accident because of stories that people told her about trains. For example, with regard to the earlier incident, the minor's mother had told her "to stay away from them 'cause they were dangerous." The minor stated that her mother told her this "[b]ecause she didn't want me to get over there and get injured, and she knew that was probably what was going through my mind," and "[p]robably because she didn't want me to get hurt and she wanted me to know about it then."

The minor remembered her mother's scolding over the previous train incident to be that "she didn't want me playing near trains because something seriously could happen," which the minor thought meant she "could get killed or one of [her] legs or [her] arms could get cut off by it." The minor confirmed that she understood that she should not get close to trains, moving or standing still, or railroad tracks.

She also stated that she knew at the time of her accident that she might get into trouble for being near the trains because her mother thought she "could have gotten really injured really bad . . . ." She knew as well that jumping on the train could be dangerous and that she could get hurt, but she "didn't figure anything would really happen." She stated she "wasn't really figuring the consequences of what would happen," so she "just decided to do it anyway." Knowing she should not be trying to jump the train was going through her mind, but she "wanted to try something exciting," which would have been being "able to ride along the train."

The record includes the affidavit of Dr. Keith D. Allen, who holds a doctorate in child clinical psychology and who serves as an associate professor in the department of pediatrics, division of pediatric psychology, at the University of Nebraska Medical Center. Although he had never met or examined the minor, he has read the research of others and has conducted "psychological observations for the population within [the 10-14 year] age group including cognitive capacity for critical function and understanding of the full range of consequences of an action."

He declared his expert opinion to be that there is a "prevalence of high risk behavior and related injury typically found in youth [ages 10-14]" and that "[r]esearch suggests that there is an increased vulnerability of younger adolescents . . . for engaging in high risk behavior . . . ." As a suggestion for why youth engage in high-risk behavior, Allen stated that "perhaps they do not understand the risks they are taking[, b]ut there is growing evidence that youth are not ignorant of risks and are actually very aware of many aspects of some risks . . . ." He further stated:

> There is substantial evidence that youth do not have the cognitive capacity to use critical thinking [citation omitted]; to make reasoned choices and judgments [citation omitted]. An essential element of rational decision making is the ability to understand the full range of consequences of an action, or to think critically in terms of tradeoffs between benefits and costs. In large part this is because the cognitive development in most youth limits their ability to learn from generalized or abstract messages concerning the health risks of engaging in specified behaviors; experience is more important [citation omitted]. Research has demonstrated that nearly 85 % of youth 11-12 years old (and 65 % of youth as old as 18), still operate in the concrete operations level of cognitive development [citation omitted]. That is, they have a hard time thinking about future events or using information about those events in determining behavior now.
>
> . . . .
>
> . . . Most youth think very concretely and do not comprehend abstract, future-oriented ideas, like the pursuit of health and avoidance of injury [citation omitted]. At the same time, they respond very well to concrete immediate experiences like peer pressure, self-expression, counter-control, and excitement.

## IV. ANALYSIS

We begin our analysis by recalling that in actions accruing before February 8, 1992, a plaintiff may be barred from recovering as a matter of law if the plaintiff's contributory negligence

is more than slight and the defendant's negligence was not gross in comparison. *Melick v. Schmidt, ante* p. 372, 557 N.W.2d 645 (1997). Because this cause of action accrued on September 16, 1990, this rule applies. See Neb. Rev. Stat. § 25-21,185 (Reissue 1995).

We also recall that a plaintiff is contributorily negligent if (1) she or he fails to protect herself or himself from injury, (2) her or his conduct concurs and cooperates with the defendant's actionable negligence, and (3) her or his conduct contributes to her or his injuries as a proximate cause. *Harrison v. Seagroves*, 250 Neb. 495, 549 N.W.2d 644 (1996); *Nickell v. Russell*, 247 Neb. 112, 525 N.W.2d 203 (1995). To entitle a defendant to summary judgment on the issue of contributory negligence, the defendant has the burden of proving, under the facts viewed most favorably to the plaintiff, that (1) the plaintiff's contributory negligence was more than slight as a matter of law or (2) the defendant's negligence was not gross in comparison to the plaintiff's negligence as a matter of law. See *Melick, supra.*

We recall, too, that in reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Moulton v. Board of Zoning Appeals, ante* p. 95, 555 N.W.2d 39 (1996).

Where reasonable minds may draw different conclusions and inferences from the evidence as to the negligence of the defendant and contributory negligence of the plaintiff, and the degree thereof when one is compared to the other, the issues must be submitted to the jury. See, *Melick, supra*; *Harrison, supra.* The minor contends that the contributory negligence of a child is always a question of fact resting within the purview of the jury.

The seminal case concerning the current law on this issue is *Camerlinck v. Thomas*, 209 Neb. 843, 312 N.W.2d 260 (1981). Therein, the trial court had directed a verdict for a 6-year-old child on the basis that a child of tender years is not chargeable with negligence. Although *Camerlinck* deals with negligence, the case is nonetheless applicable to our analysis because, "although the cases in some jurisdictions distinguish between negligence and contributory negligence of minors, Nebraska

has been consistent in its holding that the same standards should apply in either situation." *Id.* at 856-57, 312 N.W.2d at 267. We recognized in *Camerlinck* that our prior holdings were not always consistent and adopted the rule found in Restatement (Second) of Torts § 283 A (1965), writing:

> The rule itself is cited in that work as follows at 14: "If the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable person of like age, intelligence, and experience under like circumstances." The Restatement states that the rule contained in that section is commonly applied to children of tender years. In Comment b of that section the Restatement discusses the *"Special standard for children,"* and we quote from that Comment at 15-16:
>
> "The special standard to be applied in the case of children arises out of the public interest in their welfare and protection, together with the fact that there is a wide basis of community experience upon which it is possible, as a practical matter, to determine what is to be expected of them.
>
> "A child of tender years is not required to conform to the standard of behavior which it is reasonable to expect of an adult. His conduct is to be judged by the standard of behavior to be expected of a child of like age, intelligence, and experience. A child may be so young as to be manifestly and utterly incapable of exercising any of those qualities of attention, perception, knowledge, experience, intelligence, and judgment which are necessary to enable him to perceive a risk and to realize its unreasonable character. On the other hand, it is obvious that a minor who has not yet attained his majority may be quite as capable as an adult of exercising such qualities. Some courts have endeavored to lay down fixed rules as to a minimum age below which the child is incapable of being negligent, and a maximum age above which he is to be treated like an adult. Usually these rules have been derived from the old rules of the criminal law, by which a child under the age of seven was considered incapable of crime, and one over fourteen was considered to be as capable as an adult. The

prevailing view is that in tort cases no such arbitrary limits can be fixed. Undoubtedly there is a minimum age, probably somewhere in the vicinity of four years, below which negligence can never be found; but with the great variation in the capacities of children and the situations which may arise, it cannot be fixed definitely for all cases.

"Between the two extremes there are children whose capacities are infinitely various. The standard of conduct required of the child is that which it is reasonable to expect of children of like age, intelligence, and experience. 'Intelligence' includes other mental capacities, but does not include judgment, which is an exercise of capacity rather than the capacity itself. The fact that the child is mentally retarded, or that he is unusually bright for his years, is to be taken into account; but once such account is taken, the child is still required to exercise the judgment of a reasonable person of that intelligence. Likewise to be taken into account are the circumstances under which the child has lived, and his experience in encountering particular hazards, or the education he has received concerning them. If the child is of sufficient age, intelligence, and experience to understand the risks of a given situation, he is required to exercise such prudence in protecting himself, and such caution for the safety of others, as is common to children similarly qualified.

"It is impossible to lay down definite rules as to whether any child, or any class of children, should be able to appreciate and cope with the dangers of many situations. A child of ten may in one situation have sufficient capacity to appreciate the risk involved in his conduct, and to realize its unreasonable character, but in another situation he may lack the necessary mental capacity or experience to do so; and in the case of another child of ten of different mental capacity or experience a different conclusion may be reached in the same situation."

209 Neb. at 858-60, 312 N.W.2d at 268. We then held that whether the 6-year-old defendant was negligent in striking another child in the eye with a stick while the latter was sliding

down a playground slide presented a question of fact for the jury, and thus reversed the judgment of the trial court.

More recently, in *Suarez v. Omaha P.P. Dist.*, 218 Neb. 4, 352 N.W.2d 157 (1984), a 12-year-old boy was shocked and burned when he climbed a 27-foot tree and touched a high-voltage wire strung above it. Although whether the boy knew the extent of the dangers of electricity was not clear, he possessed average intelligence and testified that he knew before he climbed the tree that there were powerlines running above it and that he could be shocked if he touched them. He also testified that he did not intentionally try to grab the wires. Citing *Johnston v. New Omaha Thomson-Houston Electric Light Co.*, 78 Neb. 27, 113 N.W. 526 (1907), we wrote that a 12-year-old should possess sufficient knowledge that a wire carrying electrical current is capable of causing shock or injury should one come in contact with it. Because the boy was of sufficient age, intelligence, and experience to understand the risk of climbing to the top of the tree in proximity to overhead powerlines, we ruled him guilty of contributory negligence and dismissed his cause of action.

Earlier in the year of the *Suarez* decision, we adjudicated *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309 (1984), an action brought under the Political Subdivisions Tort Claims Act, in which the trial court had entered a judgment in favor of two 12-year-old boys who were injured when the lighted firecracker they dropped into a 55-gallon drum labeled "flammable" caused the explosion of the residue. Holding that the trial court was clearly wrong in failing to find that the boys had been guilty of contributory negligence sufficient to bar their recovery, we reversed the judgment in their favor and remanded the cause with the direction that it be dismissed. In so holding, we noted that the use of firecrackers was prohibited in the park at which the occurrence took place; that the boys had been warned by their parents that fireworks were dangerous and that they should be careful when using them; that the boys were aware of the danger involved in using fireworks; and that although there was conflicting testimony as to whether the boys had noticed the "flammable" marking on the drum, the label was plainly visible and the boys knew what the word

"flammable" meant. We restated the rule that a child is required to exercise that degree of care which a person of that age would naturally and ordinarily use in the same situation under the same circumstances, and observed that the degree of care required increases when an actor is dealing with a dangerous activity, such as exploding firecrackers.

Still earlier in the year, we were presented in *Cullinane v. Interstate Iron & Metal*, 216 Neb. 245, 343 N.W.2d 725 (1984), with the case of a 10-year-old boy who had apparently fallen through a hole in a building being scrapped for steel. The trial court granted the defendant building owner a directed verdict at the close of the plaintiff's case in chief. On the issue of the boy's contributory negligence, we wrote,

> In 1917, and still applicable today, we held in *Rule v. Claar Transfer & Storage Co.*, 102 Neb. 4, 165 N.W. 883 (1917), that, as a general rule, whether a child 11 years of age is of sufficient knowledge, discretion, and appreciation of danger that he may be held guilty of contributory negligence is a question for the jury to determine.

*Id.* at 249, 343 N.W.2d at 728. Noting the uncontroverted evidence that the building owner was aware of the hazardous condition presented by the holes in the floor and that another witness had almost fallen into one of the holes, we concluded that the issue of the boy's contributory negligence, or the degree thereof, should have been submitted to the jury.

*Rule v. Claar Transfer & Storage Co.*, 102 Neb. 4, 165 N.W. 883 (1917), cited in *Cullinane*, involved a collision between an 11-year-old plaintiff riding a bicycle and a man driving a motor vehicle owned by the defendant. In appealing a judgment on the verdict for the plaintiff, the defendant argued that the plaintiff could not complain of the defendant's negligence, as the plaintiff's own negligence had concurred in producing his injury, and that an 11-year-old of ordinary intelligence may be guilty of contributory negligence as a matter of law. Remarking on the "sharp conflict in the evidence upon almost every point," *Rule*, 102 Neb. at 5, 165 N.W. at 883, we affirmed the judgment of the trial court, but wrote that of "the soundness of [defendant's] propositions we have little doubt," *id.* at 7, 165 N.W. at 884. We also reaffirmed that "[t]he general rule is that whether contrib-

utory negligence may be attributed to a child of such tender years is a matter for the jury under all the circumstances of each case." *Id.* Although not quoted in *Cullinane*, the *Rule* court also wrote:

It is only in an extreme case where the facts show plainly knowledge and appreciation of the danger to be incurred if a certain act is performed, such as in the case of *Johnston v. New Omaha T. H. E. L. Co.*, 78 Neb. 27, [113 N.W. 526 (1907),] that a court will declare as a matter of law that a child of that age may be guilty of contributory negligence.

102 Neb. at 7, 165 N.W at 884. (The *Johnston* citation in *Rule* refers to the opinion on rehearing, the original opinion being found at *Johnston v. New Omaha Thomson-Houston Electric Light Co.*, 78 Neb. 24, 110 N.W. 711 (1907), wherein we reversed a judgment for a 12-year-old boy who purposely took hold of an electric powerline for the purpose of receiving a shock.)

The observation made in *Rule* was repeated in *Bear v. Auguy*, 164 Neb. 756, 83 N.W.2d 559 (1957). Therein, we affirmed a judgment on the verdict in favor of a motor bicyclist, who was approximately 14 years 8 months old, involved in an accident with an automobile while the bicyclist was being chased by a dog he feared. We again noted that

[i]t is only in an extreme situation where the facts show plainly knowledge and appreciation of the danger that may be incurred, if certain action is had, that a court may decide as a matter of law that a minor of such an age was guilty of negligence, or that his act or omission was the proximate cause of the happening in question.

*Id.* at 768, 83 N.W.2d at 567.

The most recent case on the issue of a child's negligence is *Center State Bank v. Dana, Larson, Roubal & Assoc.*, 226 Neb. 408, 411 N.W.2d 635 (1987), wherein an almost-13-year-old boy was injured when propane gas escaping from an underground supply tank formed a white cloud and exploded. Some of the evidence showed that the child was running in and out of the white cloud before it exploded. The defendant alleged that the child was contributorily negligent in failing to leave an area which he knew, or in the exercise of reasonable care should

have known, was dangerous. Quoting *Farmer v. S.M.S. Trucking Co.*, 180 Neb. 779, 145 N.W.2d 922 (1966), we reaffirmed that " '[k]nowledge is fundamental to liability for negligence. The very concept of negligence presupposes that the party charged therewith either fails to foresee an unreasonable risk of injury to another, or could have foreseen it had he conducted himself as a reasonably prudent person.' " *Center State Bank*, 226 Neb. at 415, 411 N.W.2d at 639. We then observed that the only direct evidence about the child's knowledge and awareness of the dangerous area was his own testimony that he did not know what propane was, did not know the area around the propane truck where he was standing and walking was dangerous, and did not know the propane cloud was dangerous. We also noted that when the child arrived at the leak area, he thought the cloud looked like burning leaves and asked the truckdriver " 'what was wrong,' " *id.* at 417, 411 N.W.2d at 640, showing that this was an unusual circumstance not seen before by him and that he did not recognize either the danger or that he was in a dangerous area. We therefore concluded that under the circumstances, the almost-13-year-old exercised the degree of care required of him and that he neither knew nor, in the exercise of reasonable care, should have known that he was in an area that was dangerous. We thus held that as a matter of law, the child was not contributorily negligent and that the issue should not have been submitted to the jury.

The foregoing review of our case law demonstrates that the minor in the instant case is wrong in asserting that the question of an almost-11-year-old's contributory negligence must always be decided by a jury. Rather, the issue is whether such a child had sufficient knowledge, discretion, and appreciation of the danger that it can be said as a matter of law that the child was contributorily negligent and, if so, whether that contributory negligence was sufficient to bar recovery as a matter of law.

In focusing on that question, we first turn our attention to the Allen affidavit and recall that in *Rodgers v. Chimney Rock P.P. Dist.*, 216 Neb. 666, 671, 345 N.W.2d 12, 15 (1984), we wrote, in regard to psychological evidence, that it is human nature sometimes to ignore obvious dangers:

It is still the rule in this jurisdiction that one must exercise ordinary care for his own safety, and this duty is commensurate with the danger to which he is exposed. There is no rule which protects an injured party who assumes the risk of injury and fails to use due care to avoid injury from dangers which are open and obvious.

We then affirmed a judgment for the defendant power company in part on the basis that the decedent, while cleaning a well located under an electrical powerline, brought a metal pipe into contact with the line. Approximately 5 years ago, we reaffirmed that although "it may be human nature sometimes to ignore the obvious and disregard the familiar, [the rule nonetheless remains that] one must exercise ordinary care for his or her own safety, and this duty is commensurate with the danger to which he or she is exposed." *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 232, 475 N.W.2d 105, 119 (1991).

Accordingly, the Allen affidavit is simply not relevant to our inquiry; it merely points out that children do not always and in all respects think as do adults. That is not the question; the question is whether, under the circumstances existing here, the minor can be said as a matter of law to have failed to exercise the degree of care required of an almost-11-year-old in those circumstances.

The evidence that the minor was repeatedly warned that trains are dangerous is uncontradicted. She had been told that trains could seriously hurt or even kill her and that she should not play near them, and she had been scolded and disciplined for doing so. In addition, although she stated that she did not think anything would really happen, she nonetheless admitted that she knew that jumping on the train in question could be dangerous and that she could get hurt. Thus, there is no question that she knew she was doing something which was dangerous and could hurt her. While it is true that she may not have appreciated the specific danger involved in trying to jump onto a moving train, she certainly knew from the pain she felt after her first unsuccessful effort that she could sustain some type of injury. Moreover, her performance at school, work around her home, participation in activities outside of school, and understanding of the rules for operating a bicycle leave no question

that she was capable of understanding what she had been told, saw, and felt.

To constitute the want of due care, it is not necessary that one have anticipated the injury which occurred; it is sufficient that one knew or should have known that substantial injury was likely. See *Schmidt v. Omaha Pub. Power Dist.*, 245 Neb. 776, 515 N.W.2d 756 (1994). Thus, the uncontradicted evidence demonstrates that the minor's persistence in trying to do what she knew and appreciated was dangerous constitutes a failure by her to exercise in the circumstances presented the degree of care expected of a child of like age, intelligence, and experience. In short, this is one of those extreme cases contemplated in *Bear v. Auguy*, 164 Neb. 756, 83 N.W.2d 559 (1957), and *Rule v. Claar Transfer & Storage Co.*, 102 Neb. 4, 165 N.W. 883 (1917), wherein the facts show plainly that the minor had the knowledge and appreciation of the danger to be incurred such as to have required the district court to declare as a matter of law that she was guilty of contributory negligence sufficient to bar recovery.

## V. JUDGMENT

Accordingly, as first noted in part I, the judgment of the district court must be, and hereby is, affirmed.

AFFIRMED.

WHITE, C.J., dissenting.

The majority in its opinion reaffirms the general rule that the issue of whether a child may be held guilty of contributory negligence is normally a question for the jury to determine. In addition, it recognizes and applies a narrow exception to such a rule, namely, that the issue of contributory negligence on the part of a minor constitutes a question of law when the facts clearly demonstrate that the minor had knowledge and appreciation of the danger to be incurred. I disagree with the majority's application and recognition of such an exception.

In *Armer v. Omaha and Council Bluffs St. Ry. Co.*, 151 Neb. 431, 37 N.W.2d 607 (1949), this court reviewed an incident where an 11-year-old girl had been hit by a bus while she was riding her bicycle. This court held that whether the girl was neg-

ligent was an issue to be determined by a jury. According to the court,

> [t]he conduct of appellant as shown by this record should not, her age considered, conclusively bar her right of recovery . . . . She doubtless knew that there was danger of injury in traveling in the street and in turning to the left to cross the street. Nearly any child of her age would answer, if asked, that it knew if it fell in the river it might be drowned; if it fell in the fire it would be burned; or if it got in the way of a streetcar or a motor vehicle it would be injured and possibly killed; but mere childish knowledge of everyday things does not necessarily establish that they appreciate or understand the necessity for keeping away from, or not doing these things. . . . The infant is favored by the law not so much on his lack of knowledge as because of indiscretion, imprudence, lack of judgment, and impulsiveness.

*Id.* at 437-38, 37 N.W.2d at 610-11.

While it may be true in the instant case that the minor was warned about the dangers of playing around trains and reprimanded for playing in trainyards, it is not clear whether she fully appreciated the necessity of keeping away from trains. As in *Armer*, there exists a dispute as to whether the minor fully understood the ramifications of playing around trains for purposes of establishing contributory negligence. Therefore, I conclude that the district court erred in declaring as a matter of law that the minor was guilty of contributory negligence.

Moreover, I disagree with the majority's recognition of an exception to the general rule, and I find it appropriate to overrule any prior Nebraska cases adopting such an exception. It is my position that the question of whether a child was contributorily negligent is always a question for the jury.